**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Frank M. WILLEY, Defendant–Appellant.**

**No. 91–3940.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1992.

Decided Feb. 5, 1993.

Rehearing and Rehearing En Banc Denied March 9, 1993.

Stephen J. Liccione, Asst. U.S. Atty., Office of the U.S. Atty., Milwaukee, WI (argued), for plaintiff-appellee.

James M. Merberg, Boston, MA (argued), for defendant-appellant.

Before COFFEY and MANION, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

MANION, Circuit Judge.

Frank M. Willey, a restaurateur, hired three men to set fire to the restaurant of his main competitor. Willey was conveniently out of town when the fire occurred. The government charged Willey and two of the arsonists with conspiracy to commit arson and with arson. The three codefendants pleaded guilty to the charges. The district court sentenced Willey under section 2K1.4 of the 1989 Sentencing Guidelines. Using the 1990 amendment to the section as its framework, the court departed upward. The court sentenced Michael Forbes, the person who set the fire, under the 1989 Guidelines. Although the court considered the 1990 amendment in sentencing Forbes, the court did not impose an upward departure.

On appeal, Willey contends (1) that the district court erred in finding that an upward departure was proper because the 1989 version of section 2K1.4 failed to consider the type of arson he committed; (2) that the district court erred in not stating appropriate reasons for the upward departure; (3) that the district court violated the ex post facto clause of the United States Constitution in using the 1990 amendment as a sentencing framework; and (4) that the district court erred in giving him a more severe sentence than Forbes. We affirm.

## I. Background

### A. Facts

Frank Willey owned and operated the Old Cream Top Grill and Tap Room in Whitewater, Wisconsin. Mr. and Mrs. Randy Cruse owned and operated Randy's Supper Club and were Willey's main competitor. In mid-July 1989, Willey hired John Piscopo to set fire to Randy's Supper Club. Willey agreed to pay Piscopo approximately $20,000.00 in installment payments. Piscopo persuaded Paul Fleisher to assist him with the arson. Shortly before the crime took place, both men recruited Forbes to actually set the fire.

On August 16, 1989, Piscopo, Fleisher, and Forbes traveled from Fort Lauderdale, Florida, to Whitewater. They went to Randy's Supper Club that evening for dinner to give Forbes the opportunity to inspect the layout of the restaurant. After dinner, the three men went to a service station, purchased a one gallon metal can, and filled the can with gasoline. At approximately 4:00 a.m. the next day, the three men returned to Randy's Supper Club. While Piscopo and Fleisher remained outside as lookouts, Forbes broke into the building, poured the gasoline onto the floor of the restaurant, and set the building ablaze. The three men immediately fled Whitewater for Fort Lauderdale. Willey was purposely out of town on the night of the arson. The fire damage to Randy's Supper Club was later estimated in the $1,000,000.00 range.

The police investigation into the arson made little progress until 1991 when Piscopo and Fleisher were arrested in Florida on unrelated charges. Fleisher identified himself, Piscopo, and Forbes as the arsonists. A criminal complaint was then filed in the Eastern District of Wisconsin against Piscopo and Forbes. The police later arrested both men. Piscopo agreed to cooperate with the police. Wearing a body wire, Piscopo met with Willey. Willey told Piscopo that he would pay him $100,000.00 if Piscopo would not implicate him in the arson. Willey told Piscopo that he would flee to Canada, if necessary, to avoid arrest. Willey also informed Piscopo that he had spoken with Forbes's father and that Forbes knew about Willey's role in the arson. Willey then told Piscopo he wanted Piscopo to meet with him and Forbes so the three of them could agree on a story regarding the arson. Based on Willey's statements to Piscopo, a criminal complaint was issued against Willey, and federal law enforcement agents arrested him in Fort Lauderdale.

### B. District Court Proceedings

Willey, Piscopo, and Forbes pleaded guilty to conspiracy to commit arson on

property used in interstate commerce, 18 U.S.C. §§ 2, 371, 844(i), and to maliciously damaging and attempting to destroy by fire property used and engaged in interstate commerce, 18 U.S.C. §§ 2, 844(i).[1] The United States Office of Probation and Parole then prepared a presentence investigation report ("PIR") for Willey. Willey objected to the PIR, and Probation filed an addendum. At the hearing on Willey's objections, the district court determined, based on the 1989 Sentencing Guidelines, that Willey had a total offense level of seventeen and a criminal history category of one. The court set Willey's Sentencing Guidelines range between twenty-four and thirty months.

At sentencing, the district court stated that it would upwardly depart from the 1989 Sentencing Guidelines in light of the ramifications of Willey's crime. The court noted that arson cases typically involve a situation in which an individual burns his own property to collect the insurance money. But in this case, Willey initiated and funded the arson of the Cruses' restaurant. The court found that Willey's offense not only destroyed the Cruses' business, it also initially damaged their reputation, because the police first suspected and investigated them for setting the fire. The court also found that Willey's crime endangered many lives: the Cruses, who were asleep nearby in their house; the firefighters, who put out the fire; and Forbes, who set the fire. The court found Willey's crime, short of murder, "one of the most despicable crimes anybody could ever commit."

Owing to the uniqueness and severity of Willey's offense, the court determined that the 1989 Sentencing Guidelines inadequately covered the breadth and depth of the type of arson Willey committed. In examining the November 1, 1990, amendment to section 2K1.4, the district court determined that the Sentencing Commission considered arson a more serious crime than it had thought in the past and, thereby, increased the penalties for arson. The district court found that the 1990 version better addressed the type of predatory arson Willey committed. Consequently, the court concluded that the 1990 amendment, although not technically applicable to Willey, provided it with an appropriate framework on which to structure Willey's departure sentence.[2]

Rather than explaining the Guideline computations to Willey, the court referred him to the addendum to his PIR; the addendum explained in detail the calculations for an upward departure sentence using the November 1, 1990, amendment as a framework. In accordance with these calculations, the district court concluded that Willey's upward departure sentencing range, based on a four-level increase to his offense level under the amendment, was between thirty-seven and forty-six months. The court then sentenced Willey to a forty-two month concurrent sentence on each count of the indictment, because he had committed a serious and rare offense.

When the district court sentenced Forbes, which it did before it sentenced Willey, the court found that Forbes had an offense level of fifteen and a criminal history category of three under the 1989 Guidelines. Forbes's sentencing range fell between twenty-four and thirty months. As with its sentencing of Willey, the court considered the applicability of the 1990 amendment to Forbes's sentence. The court, however, declined to use the amendment as a framework for an upward departure in sentencing Forbes. The court found that Forbes's role in the arson, although he had set the fire, was less than

---

1. The indictment did not include Fleisher, apparently because he assisted the government in arresting the three men and agreed to testify against them.

2. As explained in Part II.C of this opinion, the November 1, 1990, amendment to the Sentencing Guidelines did not automatically apply to Willey. The amendment went into effect after Willey committed his offense and increased the penalty Willey would have received under the 1989 Guidelines. A retroactive application of the amendment, therefore, would have violated the ex post facto clause of the United States Constitution. *See, e.g., United States v. Golden,* 954 F.2d 1413, 1417 (7th Cir.1992); *United States v. Wilson,* 962 F.2d 621, 627–28 (7th Cir. 1992).

the role the others had played in planning and committing the crime. (Forbes became part of the crime shortly before it was committed.) The court also found that the amount of damage Forbes caused was slightly over the threshold amount of loss under the 1989 Guidelines. The court further found that although Forbes had a criminal history category of three, his previous crimes were not violent and did not involve the use of a weapon. As a result, the court sentenced Forbes to twenty-eight months.

The court gave Forbes a sentence fourteen months shorter than the sentence the court had imposed on Willey. At Willey's sentencing hearing, the court explained to Willey that it gave him a longer sentence because he played a greater role in the arson than Forbes. Willey instigated and funded the crime. Consequently, he was the main one to blame for the injuries that befell the Cruses.

## II.  Analysis

### A.  *The 1989 and 1990 Versions of Section 2K1.4*

■ In Willey's first point on appeal, he contends that the district court erred in concluding that an upward departure was proper because the 1989 version of section 2K1.4 of the Sentencing Guidelines failed to address the kind or degree of arson he committed.[3]  In particular, Willey argues that the district court erred in finding that the 1989 version did not address the destruction of a structure other than a dwelling and the ruination of the victim's livelihood, but that the 1990 amendment to section 2K1.4 did. To support his position, Willey points to two statements the district court made. The district court stated to Willey during sentencing:

> Typically in a situation like this the arson would have committed or been committed

on your restaurant, not Randy's Supper Club. And it is in that regard that I find that the Sentencing Commission in formulating the guidelines that were in existence at the time of the commission of this offense did not adequately in my view cover the breadth and depth of really what we were talking about.

The district court wrote in the judgment of conviction:

> The Commission's amendment of the guideline for arson addressed factors not dealt with when this offense occurred. The 11–1–90 Amendments specifies [sic] a base offense level of 20 if the offense involved the destruction of a structure other than a dwelling. Since this arson involved the destruction of a restaurant and ruined the livelihood of the victim, an upward departure is appropriate.

Willey directs our attention to selective statements, which must be placed in context to understand the reason the district court departed from the 1989 Guidelines. In the first place, the court found Willey's offense an atypical variety of arson. The court stated to Willey at sentencing:

> this is not a case in which somebody burns some property to collect on the insurance proceeds, but rather more significantly designed to destroy another person's endeavors in terms of a business together with all of the other inferences and innuendos that flow from episodes such as this. As anyone in law enforcement will readily admit, the first subject or suspect in an arson case are the owners or someone with an interest in the affected property.

> So it comes as no surprise to the court that Mr. and Mrs. Cruse were put to the test, as it were, in terms of their own endurance in terms of dealing with all of the adjuncts; and in some respects on a personal level it was far more traumatiz-

---

**3.**  A district court may depart from the Sentencing Guidelines, if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."  18 U.S.C. § 3553(b); *see also* United States Sentencing Commission, *Guidelines Manual*, § 5K2.0 (Nov. 1990).  "In determining whether a circumstance was adequately taken into consideration, the court shall consider only the Sentencing Guidelines, policy statements, and official commentary of the Sentencing Commission."  18 U.S.C. § 3553(b).

ing for them than it was for you because they didn't expect it, you did. You had something to gain. They had everything to lose.

In the second place, the court found Willey's crime despicable:

And I ... wonder ... if you ever took the time to think about what the impact of this, as I've referred to, despicable act caused in terms of the potential for harm to the fire fighters, the potential harm to the Cruses in terms of their own personal safety, Michael Forbes, who ... happened to be the torch and literally could have been a human torch throwing gasoline around in the stealth of night and then having it absorbed into his shoes and before leaving the property or premises sticking [sic] the match that brought about the intended result. ...

And, frankly ... I don't see anything, not one shred, not one morsel of fact or evidence to suggest that this [crime] was worth it for anybody. ...

But to foist criminal conduct like this on our society is and the significant dollar loss and the potential for loss of human life is just more than indeed I would suggest any court can fathom.

Based on the type of offense Willey committed, the court determined that a departure was appropriate:

given Congress's directive to the Sentencing Commission with respect to these guidelines, the commission in its years of experience first in drafting the guidelines and then from some practical experience since November of 1987 has from time to time chosen to amend these guidelines. And in this case it is, frankly, no coincidence in my view that the activities of the commission square full well with my thoughts with regard to departure because they have, in fact, amended these guidelines resulting in a four-level increase for the offense level.

Our review of the district court's statements regarding Willey's sentencing leads us to conclude that the district court departed from the 1989 Guidelines not solely for the ground Willey advances—that the court departed because the 1989 version

fails to address the burning of a structure other than a dwelling, whereas the 1990 amendment does. The court primarily departed because Willey committed a rare crime. He committed a predatory attack on his chief competitor and, therefore, deserved a greater punishment than that which would be imposed on a person who burnt his own property to collect the insurance money. An examination of the two versions of section 2K1.4 and of the official commentary to the 1990 amendment demonstrates that the district court properly found that the 1989 version of section 2K1.4, as compared to the 1990 version, did not adequately consider the kind or degree of crime Willey committed.

The 1989 version of section 2K1.4 states in full:

### § 2K1.4. *Arson; Property Damage By Use of Explosives*

(a) Base Offense Level: **6**

(b) Specific Offense Characteristics

If more than one applies, use the greatest:

(1) If the defendant knowingly created a substantial risk of death or serious bodily injury, increase by **18** levels.

(2) If the defendant recklessly endangered the safety of another, increase by **14** levels.

(3) If the offense involved destruction or attempted destruction of a residence, increase by **12** levels.

(4) If the defendant used fire or an explosive to commit another offense that is a felony under federal law, or carried explosives during the commission of any offense that is a felony under federal law (*i.e.*, the defendant is convicted under 18 U.S.C. § 844(h)), increase by **7** levels.

(5) If the defendant endangered the safety of another person, increase by **4** levels.

(6) If a destructive device was used, increase by **2** levels.

(c) Cross References

(1) If the defendant caused death, or intended to cause bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses

Against the Person), if the resulting offense level is greater than that determined above.

(2) Apply § 2B1.3 (Property Damage or Destruction) if the resulting offense level is greater than that determined above.

(d) Note

(1) The specific offense characteristic in subsection (b)(4) applies only in the case of an offense committed prior to November 18, 1988.

United States Sentencing Commission, *Guidelines Manual*, § 2K1.4 (Nov. 1989). The 1990 version of section 2K1.4 reads:

§ 2K1.4. *Arson; Property Damage By Use of Explosives*

(a) Base Offense Level (Apply the Greatest):

(1) 24, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense, and that risk was created knowingly; or (B) involved the destruction or attempted destruction of a dwelling;

(2) 20, if the offense (A) created a substantial risk of death or serious bodily injury to any person other than a participant in the offense; (B) involved the destruction or attempted destruction of a structure other than a dwelling; or (C) endangered a dwelling, or a structure other than a dwelling;

(3) 2 plus the offense level from § 2F1.1 (Fraud and Deceit) if the offense was committed in connection with a scheme to defraud; or

(4) 2 plus the offense level from § 2B1.3 (Property Damage or Destruction).

(b) Specific Offense Characteristic:

(1) If the offense was committed to conceal another offense, increase by 2 levels.

(c) Cross Reference

(1) If death resulted, or the offense was intended to cause death or serious bodily injury, apply the most analogous guideline from Chapter Two, Part A (Offenses Against the Person) if the resulting offense level is greater than that determined above.

United States Sentencing Commission, *Guidelines Manual*, § 2K1.4 (Nov. 1990). The official commentary to the November 1, 1990, amendment states that "[t]his amendment restructures this guideline to provide more appropriate offense levels for the conduct covered. The Commission has determined that the offense levels provided in the [1989] guideline do not adequately reflect the seriousness of the offenses that are covered under this section." *Id.* App. C, amend. 330, at C.182 (Nov. 1990).

As the official commentary to the 1990 version of section 2K1.4 illustrates, the Sentencing Commission expressed its awareness that arson was a more serious crime than it had thought in the past. It restructured the section, more fully enumerated the various aspects of arson, and provided increased penalties. After considering the official commentary and the two versions of section 2K1.4, we agree with the district court that an upward departure was appropriate and that the 1990 version of section 2K1.4 served well as the framework on which to determine Willey's sentence. Willey initiated and bankrolled a crime designed to put the Cruses out of business so his business would improve. He did not commit the typical type of arson, designed to receive the insurance proceeds from the destruction of one's property. Owing to the uniqueness and severity of Willey's crime, the district court did not err in departing from the 1989 version of section 2K1.4, and it properly used the 1990 amendment as its framework for departure. The 1989 version of section 2K1.4 inadequately considered the kind and degree of Willey's crime.[4] *See United States*

---

**4.** Even though the 1990 version of section 2K1.4 expressly includes the burning of a structure other than a dwelling and the 1989 version does not, Willey argues that the cross references of the 1989 version indicate that the Sentencing Commission considered arson on a structure other than a dwelling, when it drafted the 1989 version. Section 2K1.4(c)(2) (Nov. 1989) states: "Apply § 2B1.3 (Property Damage or Destruction) if the resulting offense level is greater than that determined above." Willey asserts that "[t]he term 'property damage or destruction'

*v. Thomas,* 930 F.2d 526, 530–31 (7th Cir.) ("We recognize that, by their very nature, departures involve considerations that the guidelines do not already take into account"), *cert. denied,* —— U.S. ——, 112 S.Ct. 171, 116 L.Ed.2d 134 (1991); *see also United States v. Ferra,* 900 F.2d 1057, 1062 (7th Cir.1990) ("When an aggravating circumstance is sufficiently rare that the Commission does not specify the amount of the increase, the judge may depart. In departing the judge should compare the seriousness of the aggravating factors at hand with those the Commission considered").

### B. Reasons for Willey's Upward Departure Sentence

■ In Willey's second point on appeal, he asserts that the district court erred by not articulating detailed and specific reasons for his departure sentence and by not properly quantifying the factors the court did consider. In reviewing a district court's entry of a departure sentence, this court applies a three-step approach: (1) we review de novo whether a district court's stated grounds for departure may be relied on to justify the departure; (2) we review for clear error whether the facts that support the grounds for departure actually exist in the case; and (3) we review for abuse of discretion whether the district court departed by a reasonable degree. *E.g., United States v. Torres,* 977 F.2d 321, 329 (7th Cir.1992).

First, contrary to Willey's contentions, the district court gave him appropriate reasons for his upward departure sentence. The court properly found that the 1989 version of section 2K1.4 did not adequately address the breadth and depth of the type of predatory offense Willey committed. Because Willey committed an unusual and serious crime, the district court properly departed from the 1989 Guidelines and used the enhanced penalties in the 1990 amendment as its framework for departure. *See Thomas,* 930 F.2d at 530–31; *Ferra,* 900 F.2d at 1062.

Second, the facts in this case substantiate the district court's reason for Willey's departure sentence. Willey's crime was rare; he provoked a crime that destroyed a business that took years to build and harmed the reputation—at least temporarily—of the Cruses because the police first suspected and investigated them as the arsonists. Furthermore, Willey's act endangered the life of Forbes in setting the fire, the lives of the firefighters in putting out the blaze, and the lives of the Cruses who were sleeping nearby in their house.

Third, the district court departed by a reasonable degree. The district court used the 1990 amendment as a framework and kept Willey's sentence within that framework. The increased sentence was reasonable because of the novelty and severity of Willey's offense, one not specifically contemplated under the 1989 Guidelines. Although the court did not explain the calculations to Willey, it did refer him to the addendum to the PIR, which contains the appropriate calculations. Accordingly, based on our analysis of these three factors, we conclude that the district court did not err.

### C. Ex Post Facto Violation?

In Willey's third point on appeal, he argues that the district court violated the ex post facto clause of the United States Constitution by using the November 1, 1990, amendment as a framework to impose his sentence. He contends that the district court, in essence, retroactively applied the amendment, which caused him to receive a greater sentence than he would have received under the 1989 Guidelines. To support his argument, Willey relies mainly on

---

clearly encompasses the burning of a structure other than a dwelling and the 1990 amendment does not alter the fact that, as applied to [him], the guidelines for property damage or destruction controls." Granted, on first blush Willey's argument appears to have merit; yet, we need not proceed beyond our initial reading. Wil-

ley's position derives from a misinterpretation of the district court's reason for departing from the 1989 Sentencing Guidelines. As noted in the text of this opinion, the district court departed from the 1989 version of section 2K1.4 because the version inadequately addressed the type of predatory act Willey committed.

*Miller v. Florida,* 482 U.S. 423, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987).

■ As a general rule, a district court sentences a defendant under the Sentencing Guidelines in effect on the date of his sentence. 18 U.S.C. § 3553(a)(4). Nevertheless, when the Sentencing Commission amends the Sentencing Guidelines and thereby increases the punishment imposed, the ex post facto clause precludes a district court from retroactively applying the amended Guidelines to a crime committed before the effective date of the amendment. *E.g., United States v. Golden,* 954 F.2d 1413, 1417 (7th Cir.1992); *United States v. Wilson,* 962 F.2d 621, 627–28 (7th Cir.1992).

■ In this case, however, the district court did not retroactively apply the 1990 amendment. Instead, the court utilized the 1989 Guidelines and then properly departed upward because the 1989 version did not adequately consider Willey's crime. As a result, Willey's reliance on *Miller* is misplaced. In *Miller,* the district court applied the Guidelines in effect at the time of sentencing. Yet, the Guidelines were new and imposed a greater penalty on the defendant than the Guidelines in effect at the time he committed his offense. The district court imposed the new Guidelines automatically and did not offer any reasons for an upward departure sentence. As such, the Supreme Court concluded that the manner in which the district court applied the new Guidelines violated the ex post facto clause. *Miller,* 482 U.S. at 432–33, 435, 107 S.Ct. at 2452–53, 2454. The Court, though, did not rule out the possibility of a district court sentencing a defendant under old Guidelines, but still giving the defendant an upward departure sentence commensurate with the new Guidelines; the Court cautioned that when sentencing in this manner, a district court must give clear and convincing reasons for the departure based on facts proven beyond a reasonable doubt. *Id.*

In this appeal, the district court found that Willey had a sentencing range between twenty-four and thirty months under the 1989 Sentencing Guidelines. The court then departed from that sentencing range because it determined that the 1989 version of section 2K1.4 inadequately considered either the kind or degree of Willey's crime. The court concluded that the 1990 amendment better addressed the type of predatory arson Willey committed. The amended version of section 2K1.4, with its increased penalties, represented the Sentencing Commission's realization that arson was a more serious crime than it had thought in the past. Consequently, the court used the 1990 version of section 2K1.4 as its departure framework for sentencing Willey, because the amended version provided a more fitting punishment for his crime. The district court, therefore, did not retroactively apply the 1990 amendment, as Willey maintains. The court applied the 1989 Guidelines and, based on sound reasons for departure, used the 1990 amendment as its model for sentencing upward. Thus, we find no ex post facto violation.

*D. Discrepancy in the Codefendants' Sentences*

■ In Willey's fourth and final point on appeal, he maintains that the district court erred in not uniformly applying the Sentencing Guidelines to himself and to Forbes, whom Willey describes as his "similarly situated" codefendant. Willey contends that the district court erred in using the 1990 amendment to section 2K1.4 in sentencing him and in not doing the same in sentencing Forbes.

The Sentencing Guidelines, which incorporate the precepts of uniformity and proportionality, are tailored to narrow "the wide disparity in sentences imposed for *similar criminal offenses committed by similar offenders."* U.S.S.G. Ch. 1, Pt. A.3, p.s., at 1.2 (Nov. 1990) (emphasis added). Thus, a district court is required to consider "the need to avoid unwarranted sentence disparities among defendants with *similar records* who have been found guilty of *similar conduct."* 18 U.S.C. § 3553(a)(6) (emphasis added).

The district court found that Willey and Forbes did not have similar records and were not guilty of similar conduct. Even

though Forbes set the fire and had a more extensive criminal background than Willey, the court gave Willey the longer prison term. The court determined that Willey, as the instigator of the arson, played a more invidious role in the crime than Forbes and, therefore, deserved a greater punishment. We find the district court's basis for sentencing Willey differently from Forbes reasonable and within the court's sound discretion. 18 U.S.C. § 3742(e); *United States v. Blackman*, 950 F.2d 420, 425 (7th Cir. 1991).

### III. Conclusion

The district court properly considered the November 1, 1990, amendment to section 2K1.4 as a framework in sentencing Willey; the 1989 Guidelines did not address the kind or degree of arson with which Willey was involved. The district court, moreover, articulated its reasons for giving Willey an upward departure sentence. The district court also did not violate the ex post facto clause in sentencing Willey, because the court did not retroactively apply the 1990 amendment to the Guidelines, but instead used the amendment as a framework to depart upwardly from the 1989 Guidelines. In addition, the district court did not abuse its discretion in sentencing Willey and Forbes differently. Accordingly, the district court is AFFIRMED.