**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Juan MELGAR–GALVEZ, Defendant–Appellant.**

**No. 97–2791.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 15, 1998.

Decided Dec. 4, 1998.

Thomas A. Keith (argued), Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

Thomas W. Patton (argued), Office of the Federal Public Defender, Springfield, IL,

George F. Taseff, Office of the Federal Public Defender, Peoria, IL, Richard H. Parsons, Office of the Public Defender, Peoria, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, COFFEY and RIPPLE, Circuit Judges.

COFFEY, Circuit Judge.

The defendant-appellant, Juan Melgar–Galvez, while serving a prison sentence at the Federal Correctional Institution at Pekin, Illinois, attacked a corrections officer and was charged with and pled guilty to the charge of assaulting a federal officer. 18 U.S.C. § 111(a)(1). The sentencing judge departed one point upward from the guidelines, stating that the defendant's criminal history was under-represented and that the offense caused a "disruption . of governmental function." The defendant challenges the propriety of the upward departure. We affirm.

## I. BACKGROUND

In the early afternoon of June 11, 1996, Correctional Counselor Patrick Hickey was standing in the courtyard area of the Federal Correctional Institution at Pekin, · Illinois ("FCI Pekin"), speaking with an inmate, when he was struck in the face without warning by another prisoner, the defendant-appellant, Juan Melgar–Galvez. After the assault, Melgar–Galvez stepped back a few steps and stated "Why you [expletive] disrepectin' me?" Corrections Officer Hickey activated his body alarm and summoned assistance, and immediately thereafter the defendant was restrained without further incident. The federal penitentiary at FCI Pekin was overcrowded (housing approximately 1100 with a capacity for only 775), and, since the assault was carried out in front of numerous inmates in an overcrowded institution, a very hostile situation could have developed into a prison riot.

At the time of the assault, Melgar–Galvez, an illegal alien, had amassed a criminal record which even his own lawyer described as "admittedly extensive." The presentence investigation report reflected that the defendant had previously been convicted of numerous federal and state crimes, including possession of phencyclidine (PCP) with intent to sell, grand theft from a person, theft of personal property, battery, false identification to a police officer, carrying a loaded firearm, and illegally re-entering the United States after deportation, as well as a number of probation revocations.

This extensive criminal record, combined with the fact that the instant offense (assaulting a corrections officer) was committed while the defendant was serving a term of imprisonment, see U.S.S.G. § 4A1.1(d), gave the defendant a total criminal history score of 18. Since 13 or more criminal history points places an offender in Level VI, see U.S.S.G. Ch. 5 Pt. A, the defendant was placed in Level VI. Factoring in nine points for the offense,[1] the defendant's guideline sentencing range was fifteen to twenty-one months. Upon the motion of the Government, and over the objection of the defendant, the sentencing judge decided to depart upward one point, finding that the defendant's 18 criminal history points failed to adequately reflect the seriousness of his criminal past, much less the likelihood of his committing offenses in the future. The judge also referenced another reason for the one-point departure, namely, his conclusion that the offense resulted in a "disruption of governmental function" under U.S.S.G. § 5K2.7. As a result of the one-point upward departure, the defendant's possible sentencing range became eighteen to twenty-four months, and the judge sentenced the defendant to the maximum amount, twenty-four months imprisonment.[2]

## II. DISCUSSION

■ "We review the sentencing judge's decision to depart from the guidelines for an abuse of discretion." *United States v. Dvorak*, 115 F.3d 1339, 1343 (7th Cir.1997), citing *Koon v. United States*, 518 U.S. 81, —— –

---

1. The base offense level for obstructing or impeding a federal officer is six, see U.S.S.G. § 2A2.4(a), and because the offense level included "physical contact," the base offense level was increased three points, see U.S.S.G. § 2A2.4(b)(1).

2. Pursuant to U.S.S.G. § 5G1.3(a), since the defendant committed the instant offense while already serving a term of imprisonment for a different offense, the new sentence was to run consecutively to his undischarged term of imprisonment.

———, 116 S.Ct. 2035, 2047–48, 135 L.Ed.2d 392 (1996). "[F]actual determinations underlying the application of the guidelines are reviewed for clear error." *United States v. Ewing*, 129 F.3d 430, 433 (7th Cir.1997) (citation and internal quotation omitted). "Questions involving the interpretation of the [g]uidelines are subject to *de novo* review." *Id.* at 434 (citation omitted).

■ Under the guidelines, a sentencing judge may depart upward based on criminal history if either the criminal history category fails to "adequately reflect the seriousness of the defendant's past criminal conduct" or if the defendant's criminal history category does not adequately reflect "the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. In this case, the court found that the defendant's criminal history under-represented *both* his significant criminal history *and* the likelihood that he would commit further crimes. We are convinced that there is adequate support in the record for a departure on either ground.

■ The record supports the court's conclusion that, since the defendant had amassed 18 criminal history points, the defendant's criminal history category did not reflect the seriousness of his prior conduct. The defendant concedes that upward departures may be founded solely upon an excessive number of criminal history points, *see United States v. Walker*, 98 F.3d 944, 947 (7th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1012, 136 L.Ed.2d 889 (1997), but argues that "the circumstances must be compelling or egregious to warrant departures above category VI," and, further, contends (without supporting case law) that at least 20 points should be required if a departure is to be based on criminal history points. We reject the defendant's novel suggestion that 20 points be the minimum required for departure, since this Court has already established that it is within the discretion of a sentencing judge to add an offense level where a defendant's criminal history points totaled 18. *See Ewing*, 129 F.3d at 437 ("The district court added one offense level for every three of Ewing's criminal history points that exceeded 15.... [T]his methodology is reasonable and sufficiently linked to the structure of the [g]uidelines."), citing *United States v. McKinley*, 84 F.3d 904, 911

(7th Cir.1996), *United States v. Glas*, 957 F.2d 497, 499 (7th Cir.1992), and *United States v. Scott*, 914 F.2d 959, 965 (7th Cir. 1990). Nor is this Circuit alone in affirming upward departures where the defendant had amassed less than 20 points, for several of our sister circuits have decided similarly. *See, e.g., United States v. Price*, 145 F.3d 1347 (10th Cir.1998) (table) (defendant "had a criminal history point total of 18, well beyond the category VI threshold of 13"); *United States v. Thomas*, 6 F.3d 960, 963 (2d Cir. 1993) (17 criminal history points); *United States v. Christoph*, 904 F.2d 1036, 1042 (6th Cir.1990) (17 criminal history points). The defendant's 18 serious criminal history points certainly provided an adequate foundation for the one-point upward departure.

■ We also hold that the sentencing judge's departure was proper based on his clear finding that there is a likelihood of the defendant committing more criminal offenses in the future. The record reveals that the defendant, an illegal alien and admitted gang member, has no verifiable employment history, and when asked how he has supported himself in the United States, he told a presentence investigator that he "supported himself by selling drugs." Similarly, he told an INS special agent that "he makes his living in the United States robbing people and using a big gun." Another fact also of interest is that the defendant accumulated his entire "admittedly extensive" criminal history in less than eight years, and that he was charged with the instant offense while he was in prison as the result of one of his numerous criminal convictions (for illegally re-entering the United States after deportation). The fact that the defendant has continually demonstrated a propensity to violate the laws of this country reveals a clear and uncompromising recidivist type of criminal nature which we agree certainly should be subject to upward departure. *See United States v. Paredes*, 87 F.3d 921, 926 (7th Cir.1996) ("[W]e have held that certain types of criminal records may foretell a recidivist nature not adequately represented by category VI."). Thus, we are convinced that, not only does the record support a departure based on the defendant's 18 criminal history points, the record also supports the district

court's decision that Melgar–Galvez's criminal history category did not adequately reflect "the likelihood that the defendant will commit other crimes."

In view of the district judge's finding that the defendant's criminal history was underrepresented provides an adequate basis for the one-point departure, we need not rule on the judge's additional conclusion that the defendant's offense, which created the potential for a general inmate disruption, caused a "disruption of governmental function." U.S.S.G. § 5K2.7.

AFFIRMED.