UNITED STATES of America,
Plaintiff,

v.

George A. COE, Jr., David T. Beasley,
and Jeffrey "J.J." Thomas,
Defendants.

No. 98–CR–20031.

United States District Court,
C.D. Illinois,
Danville/Urbana Division.

Oct. 14, 1999.

Hilary W. Frooman, Assistant U.S. Attorney, Urbana, IL, for plaintiff.

Douglas J. Quivey, Jr., Charleston, IL, for defendant George A. Coe.

Diana S. Lenik, Urbana, IL, for defendant David T. Beasley.

Michael McClellan, Champaign, IL, for defendant Jeffrey "J.J." Thomas.

## ORDER

McCUSKEY, District Judge.

On May 5, 1999, Defendants, George A. Coe, Jr., and David T. Beasley, each pleaded guilty to one count of mail fraud (18 U.S.C. § 1341), one count of wire fraud (18 U.S.C. § 1343) and one count of IRS impersonation (18 U.S.C. § 912). On May 6, 1999, Defendant Jeffrey "J.J." Thomas pleaded guilty to two counts of wire fraud (18 U.S.C. § 1343) and one count of IRS impersonation (18 U.S.C. § 912). This matter is now before the court for sentencing.

Comprehensive presentence investigation reports were prepared for all three Defendants. The presentence investigation reports listed 65 victims of Defendants' telemarketing scheme. Most of the victims listed were elderly people. The list showed that 17 of the victims provided funds or were contacted on more than one occasion. In particular, the reports show that Edward Almquist wired money on six occasions. The wire transfers from Almquist totaled $8,775. Also, Genrose Utsch sent 14 wires of funds totaling $34,480. The reports show that the total amount of funds fraudulently obtained by Defendants was $171,139.22.

Defendants, through their attorneys, filed various objections to the presentence investigation reports. On September 17, 1999, the Government filed a Motion for Two–Part Adjustment for Targeting Vulnerable Victims and for Upward Departure under the SCAMS Act (# 114). In addition, on September 17, 1999, Coe filed a Commentary on Sentencing Factors (# 115) and also filed a Supplement to his Sentencing Commentary (# 119) on September 23, 1999. On September 23, 1999, Thomas filed a Supplement to Commentary on Pre–Sentence Report (# 125).

A sentencing hearing was held on September 23, 1999, and October 4, 1999. At the hearing, Erica Collins testified that she allowed Defendants Coe and Thomas to use her home in December 1995 while she was in Hawaii. She later received a telephone bill which included charges for numerous long distance telephone calls which she did not make. Many of the calls on the telephone bill were made while she was in Hawaii. This telephone bill, which was admitted into evidence, showed that 34 calls were made to Edward Almquist.

Also, Gary Bacon, an Inspector with the IRS, Dana S. Kimbrough, a Postal Inspector, and Mark Drollinger, formerly a Vermilion County sheriff's deputy, testified regarding the criminal activities of Defendants. Bacon testified that Almquist was approximately 90 years old at the time he sent money after being contacted by Defendants. He further testified that Lucille Durward, who was 76 at the time, sent money three times. She sent $3,000 on two occasions and, when contacted the third time and asked for another $3,000, said she did not have that much money. She was asked how much she had and then sent another $700. Bacon also testified that Helen Blodgett, age 80, sent money on two occasions. Kimbrough testified regarding several of the elderly victims of Defendants' telemarketing scheme including Aurelia Well, age 80 at the time, who sent money at least twice. Kimbrough testified that the lead sheets ob-

tained by Defendants did not list the ages of the persons listed, but included persons who had a history of being responsive to being called. Drollinger testified that Genrose Utsch was 71 years old when she was victimized by Defendants. He stated that she wired money 14 times in the total amount of approximately $34,000. Drollinger testified that Utsch continued to wire money even after she talked to investigators and agreed to record telephone calls made to her. Drollinger also testified that a witness identified the voice of Thomas on a tape recording of a telephone call to Utsch. Drollinger further testified regarding four other victims of Defendants' telemarketing scheme.

In addition, Bacon and Kimbrough testified regarding interviews with Defendants on December 12, 1997. They testified that Defendants admitted targeting older people in their scheme. When questioned by defense counsel regarding the actual statements made by Defendants, both Bacon and Kimbrough produced the handwritten notes they had taken at the time of the interviews. These notes were admitted into evidence as Court exhibits 1 through 6. According to Bacon's notes: (1) Coe indicated that most leads were elderly men and women and that they would normally target the elderly; (2) Beasley said that 80–85% of their victims were elderly because the elderly were "more vulnerable" and that Coe used libraries to secure leads and targeted names associated with elderly people; and (3) Thomas admitted that he knew he was robbing people and called older people. According to Kimbrough's notes: (1) Coe said that most leads were old people and that most of the people who sent money were elderly; (2) Beasley said that all of them had called Genrose Utsch, that most of their leads were elderly, that 85% of the people he called were elderly because they were more vulnerable, and that Coe and Thomas went to the library to get names and picked out names that sounded old; and (3) Thomas said that he called elderly people. In short, the notes supported the testimony of Bacon and Kimbrough that Defendants admitted their participation in the scheme and admitted that they targeted elderly people.

Following the testimony of the Government's witnesses, this court specifically found all of the witnesses to be credible.

## I. OBJECTIONS

On October 4, 1999, at the sentencing hearing, this court ruled on all of Defendants' objections to the presentence investigation reports. These rulings are included in the judgment orders entered for each Defendant. This court wants to emphasize that it has overruled all of the Defendants' objections to the probation officer's statements that Defendants targeted the elderly. This court finds, by a preponderance of the evidence, that Defendants clearly did target the elderly and admitted doing so in their interviews with Bacon and Kimbrough. In addition, Thomas's objection to receiving a two-level increase "because he did not represent himself to be an IRS agent" is overruled. Thomas specifically admitted to this offense, based upon accountability, at his guilty plea hearing. This court further rejects the arguments raised by Thomas in his Supplement to Commentary on Pre-Sentence Report (# 125).

This court will also address the arguments and objections raised in Coe's Commentary and Supplement. Coe first argues that his sentence should run concurrent with his sentence in case No. 98 CR 1660 in Georgia because the conduct which led to Coe's Georgia conviction was considered relevant conduct in the instant federal offense and was part of the overall scheme covered in this case. Citing *United States v. Johnson*, 117 F.3d 1010, 1013 (7th Cir.1997), Coe argues that his sentence should be concurrent with the entire Georgia sentence, from the time he was taken into custody on December 3, 1997. At the hearing, Beasley and Thomas joined in Coe's argument, and the probation officer and the Government agreed with Coe's contention. This court therefore finds that Defendants' sentences

should run concurrently to their Georgia sentences which were imposed based upon their participation in the telemarketing scheme *and* that Defendants should be given credit for the time they have served on the Georgia convictions. Coe and Thomas are to receive credit for time served from December 3, 1997. Beasley is to receive credit for time served from October 14, 1997. In addition, Beasley has an unrelated conviction and sentence in Georgia. Therefore, Beasley's federal sentence is concurrent with the sentences imposed in Case Nos. 98–CR–1660 and 99–B0029–4, *without regard to* any unserved term of imprisonment in Case No. 97–4449, Cobb County, Georgia.

This court also agrees with Coe's argument that an upward departure is not warranted in this case based upon an amendment to the Guidelines which allows for a two-level enhancement where a "defendant relocated, or participated in relocating, a fraudulent scheme to another jurisdiction to evade law enforcement or regulatory officials." See U.S.S.G. § 2F1.1(5)(A) (Nov.1998).

In his Supplement to his Sentencing Commentary, Coe raises an issue regarding whether Coe was interviewed on December 3, 1997, as well as on December 12, 1997. This court now clarifies, from the evidence presented, that Defendants were interviewed by local Georgia law enforcement officials on December 3, 1997, and were interviewed by investigators, including Bacon and Kimbrough, on December 12, 1997.

Finally, this court notes that Beasley and Thomas have objected to the two-level adjustment in their offense levels for targeting vulnerable victims under § 3A1.1 of the United States Sentencing Guidelines. Section 3A1.1(b)(1), provided, at the time the offenses were committed, "[i]f the defendant knew or should have known that a victim of the offense was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct,

increase by 2 levels." U.S.S.G. § 3A1.1(b) (Nov.1997).

 In order to apply the § 3A1.1(b) enhancement, the district court must find *both* (1) that a victim of the defendant's crime was unusually vulnerable in some way, and (2) that the defendant targeted that victim because of this vulnerability. *United States v. Jackson,* 95 F.3d 500, 507 (7th Cir.1996), *cert denied,* 519 U.S. 1070, 117 S.Ct. 717, 136 L.Ed.2d 636 (1997). "Vulnerability" is the sort of fact which the district court is peculiarly well-positioned to gauge. *Jackson,* 95 F.3d at 507. However, in "a fraud case where the defendant issues an appeal to a broad group, the court should focus on whom the defendant targets, not on whom his solicitation happens to defraud." *United States v. Sutherland,* 955 F.2d 25, 26 (7th Cir.1992). In *Sutherland,* the Seventh Circuit found that the evidence did not support Judge Mills' finding that the defendant targeted vulnerable victims because "there was no evidence that Sutherland considered their age in deciding upon them as victims or that their age was a factor in the crime in any way." *Sutherland,* 955 F.2d at 27. In addition, "[t]here was no evidence that the targets and victims were vulnerable because of their age, mental incompetence, physical infirmity, or any other characteristic. Evidence like this is necessary to support the vulnerable victim adjustment." *Sutherland,* 955 F.2d at 27.

In *Jackson,* however, the Seventh Circuit affirmed the § 3A1.1(b) enhancement. In that case, the defendants were convicted of wire fraud, based upon their involvement in a telemarketing scheme. As part of the scheme, the defendants used a technique referred to as "reloading" where customers who had previously sent in money were re-contacted and again asked to pay taxes and fees for a prize they had supposedly won. The district court found that the defendants targeted the "reloads" because of their unique susceptibility. *Jackson,* 95 F.3d at 508. The Seventh Circuit concluded that the "vulnerable vic-

tim enhancement given these defendants was well-suited to the purposes of § 3A1.1(b)." *Jackson,* 95 F.3d at 508; see also *United States v. Williams,* 1997 WL 573379, at *2 (N.D.Ill.1997) ("[c]ourts have found the adjustment warranted when the defendant used lead lists and the 'reloading' technique or the victims were elderly and subjected to the 'reloading' technique"). The Court in *Jackson* noted that "the Guidelines do not imply that all of the victims must have been unusually vulnerable in order to apply the enhancement. It is enough if the defendant targeted any of the victims because of their unusual vulnerability." *Jackson,* 95 F.3d at 508 n. 11.

■ In this case, Kimbrough testified that Defendants obtained leads which included people with a history of being responsive to being called. Most importantly, strong evidence has been presented in this case that Defendants called the same victims over and over again. The evidence shows that Almquist was called 34 times and sent money 5 times and attempted to send money 1 additional time. Further, Utsch sent wires of funds 14 times. According to Kimbrough's notes, Beasley said that all of them had called Utsch. Based upon *Jackson,* this evidence is sufficient to warrant the 2 level enhancement under § 3A1.1(b) of the Guidelines. The evidence clearly supports a finding that many of Defendants' victims were targeted because Defendants "believed the reloaded persons to be especially vulnerable and that they specifically targeted them because of this vulnerability." See *Jackson,* 95 F.3d at 508; *Williams,* 1997 WL 573379, at *2. This is particularly true of Almquist and Utsch. In fact, the unique and extreme susceptibility of these two victims alone is enough to justify the enhancement under *Jackson.* Accordingly, this court overrules the objection of Beasley and Thomas to this two-level enhancement. The Government's Motion for Two-Part Adjustment for Targeting Vulnerable Victims (# 114–1) is GRANTED.

## II. UPWARD DEPARTURE

Section 5K2.0 of the Sentencing Guidelines authorizes a departure "if the court finds 'that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines.'" U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)); *United States v. Porter,* 145 F.3d 897, 906 (7th Cir.1998).

■ This court now finds that an upward departure is warranted based upon the evidence presented that numerous elderly victims were tragically victimized, many of them on more than one occasion. This court agrees that the applicable guidelines do not adequately consider the kind or degree of the crimes committed by Defendants in this case.

The probation officer has recommended an upward departure based upon the fact that the present version of § 2F1.1, which took effect on November 1, 1998, provides for a two-level increase for offenses involving fraud or deceit, "[i]f the offense was committed through mass-marketing." U.S.S.G. § 2F1.1(b)(3). The Commentary defines "mass-marketing" as "a plan, program, promotion, or campaign that is conducted through solicitation by telephone, mail, the Internet, or other means to induce a large number of persons to (A) purchase goods or services; (B) participate in a contest or sweepstakes; or (C) invest for financial profit. The enhancement would apply, for example, if the defendant conducted or participated in a telemarketing campaign that solicited a large number of individuals to purchase fraudulent life insurance policies." U.S.S.G. § 2F1.1, Commentary n. 3. This court agrees with the probation officer and finds that an upward departure is warranted because Defendants conducted their fraudulent campaign by way of telephone and mail in an attempt to induce a large number of persons to pay taxes or fees for sweepstakes earnings, among other fraudulent pitches.

■ A "subsequent amendment is an appropriate guide for a departure in sentencing a defendant under an earlier guideline." *United States v. Rainone*, 32 F.3d 1203, 1208 (7th Cir.1994), *cert. denied*, 515 U.S. 1102, 115 S.Ct. 2245, 132 L.Ed.2d 254 (1995). This does not violate the *Ex Post Facto* Clause of the United States Constitution so long as the upward departure is made based upon a finding that the earlier version of the Guidelines omitted a factor relevant to sentencing under the scheme of the guidelines and did not adequately figure Defendants' offenses. See *Porter*, 145 F.3d at 906; *Rainone*, 32 F.3d at 1208; *United States v. Kopshever*, 6 F.3d 1218, 1223 (7th Cir. 1993); *United States v. Willey*, 985 F.2d 1342, 1350 (7th Cir.1993). This court now finds that the earlier version of the Guidelines omitted a factor relevant to sentencing under the scheme of the guidelines and does not adequately figure Defendants' offenses. This court further notes that the amendment is referenced only to bolster the court's view that the version of the Guidelines in effect at the time of Defendants' offenses failed to adequately consider as an aggravating factor the greater harm which can be caused by the use of mass-marketing in the fraudulent scheme (see *Porter*, 145 F.3d at 906–07) and that the 1997 version of the Guidelines inadequately considered the kind and degree of Defendants' crimes (see *Willey*, 985 F.2d at 1348–49). This amendment confirms that the previous version of the Guidelines failed to consider the seriousness of committing an offense through mass-marketing.

■ In addition, the Government has argued that an upward departure may be made based upon the Senior Citizens Against Marketing Scams Act (the SCAMS Act). 18 U.S.C. §§ 2325 et seq. The SCAMS Act provides:

A person who is convicted of an offense under section 1028, 1029, 1341, 1342, 1343, or 1344, or a conspiracy to commit such an offense, in connection with the conduct of telemarketing—

(1) shall be imprisoned for a term of up to 5 years in addition to any term of imprisonment imposed under any of those sections, respectively; and

(2) in the case of an offense under any of those sections that—

(A) victimized ten or more person over the age of 55;

or

(B) targeted persons over the age of 55,

shall be imprisoned for a term of up to 10 years in addition to any term of imprisonment imposed under any of those sections, respectively. 18 U.S.C. § 2326.

This court has already concluded that the evidence shows that Defendants targeted the elderly. In addition, Defendants' offenses involved telemarketing and victimized ten or more persons over the age of 55. Accordingly, it is clear that the provisions of this section apply to Defendants' crimes for multiple reasons, allowing for an additional term of imprisonment of up to 15 years.

The Government has not cited, and this court has not found, a Seventh Circuit case which addresses the issue of a upward departure under the SCAMS Act. However, the Courts in *United States v. Scrivener*, 189 F.3d 944 (9th Cir.1999), *United States v. Brown*, 147 F.3d 477 (6th Cir. 1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 270, 142 L.Ed.2d 223 (1998), and *United States v. Smith*, 133 F.3d 737 (10th Cir.1997), *cert. denied*, 524 U.S. 920, 118 S.Ct. 2306, 141 L.Ed.2d 165 (1998), all affirmed an upward departure based upon the SCAMS Act. In those cases, as here, the defendants were convicted based upon their participation in telemarketing schemes which had numerous victims over the age of 55. The Court in *Scrivener* specifically agreed with the district court's conclusion "that the fraud provisions of the Sentencing Guidelines do not adequately take into consideration the unique evils inherent in telemarketing fraud upon the

elderly." *Scrivener*, 189 F.3d 944, 951. The Court also agreed that the SCAMS Act "manifests Congress' view that the Sentencing Guidelines do not adequately punish defendants who target the elderly, a particularly gullible class that Congress has separately attempted to protect.". *Scrivener*, 189 F.3d 944, 952.

The Courts in *Scrivener, Brown,* and *Smith* all concluded that the upward departure based upon the SCAMS Act was proper even though the Defendants also received a two-level enhancement for vulnerable victims under § 3A1.1(b). *Scrivener*, 189 F.3d 944, 952–953 (in upholding a two-level upward departure under U.S.S.G. § 5K2.0, Court concluded "that the fraud provisions of the Sentencing Guidelines do not adequately punish the reprehensible conduct here and that the SCAMS Act and the vulnerable victim enhancement are sufficiently distinct to avoid double-counting"); *Brown,* 147 F.3d at 486–88 (in upholding a two-level upward departure under § 5K2.0, Court noted that the vulnerable victim enhancement focuses on the individual victim while an upward departure under the SCAMS Act focuses on "criminal telemarketing conduct targeted at or actually victimizing a certain class of individuals, statutorily defined as those over the age of 55"); *Smith,* 133 F.3d at 746–52 (in upholding a four-level upward departure under § 5K2.0, Court stated that a single vulnerable victim is sufficient to support application of the vulnerable victim enhancement so that "the focus of the SCAMS Act and that of the vulnerable victim enhancement differ in key respects and are sufficiently distinct to avoid double counting the same offense conduct").

This court concludes that the reasoning in *Scrivener, Brown,* and *Smith* is sound and would most likely be accepted by the Seventh Circuit. This court therefore finds that an upward departure should be made in this case based upon the SCAMS Act. Consequently, the Government's Motion for an Upward Departure under the SCAMS Act (# 114–2) is GRANTED.

This court must now determine the appropriate upward departure for each Defendant.

## A. GEORGE A. COE

The Government has requested a four-level upward departure for George Coe. This court concludes that this level of departure is justified based upon the evidence presented here. The upward departure is based upon the fact that the aggravating factor of the harm which is caused by the use of mass-marketing in the fraudulent scheme, as evidenced by the addition of § 2F1.1(b)(3) to the Guidelines, is not adequately considered in the earlier version of the Guidelines *and* the fact that, based upon the SCAMS Act, the Sentencing Guidelines do not adequately take into consideration the unique evils inherent in telemarketing fraud upon the elderly.

In its Motion for Upward Departure, the Government included another reason to support an upward departure for Coe. The Government notes that Coe was interviewed by Mark Drollinger of the Vermilion County sheriff's department in December 1995, and denied any involvement in the telemarketing scheme. After this meeting with Drollinger, Coe continued to be involved in the fraudulent telemarketing scheme and even expanded his involvement. In addition, the presentence report shows that Coe was interviewed by two postal inspectors, including Kimbrough, on September 5, 1996, and denied any criminal involvement. Again, Coe continued to be involved in the fraudulent telemarketing scheme until he was finally apprehended in December 1997 in Georgia. The evidence shows that Coe was put on notice twice that he was being investigated for involvement in this telemarketing scheme but cavalierly continued his involvement and defrauded many more victims. This conduct by Coe is not adequately considered in the sentencing guidelines and provides further support for an upward departure.

Because this court has accepted the Government's recommendation of a four-level upward departure, Coe's total offense level of 20 is increased to 24. With his criminal history category of III, the guideline range is 63–78 months. Based upon the egregiousness of the crime, this court now imposes a sentence of 78 months for mail fraud and wire fraud. This court imposes a sentence of 36 months for IRS impersonation. These sentences are to be concurrent to the sentence imposed in Georgia in Case No. 98–CR–1660, with credit for time served from December 3, 1997. The further conditions of Coe's sentence, including restitution in the amount of $128,237.21, are set forth in the judgment order.

## B. DAVID T. BEASLEY

The Government has recommended a four-level upward departure for Defendant Beasley. This court concludes that the recommended upward departure is warranted here. The upward departure is based upon the fact that the aggravating factor of the harm which is caused by the use of mass-marketing in the fraudulent scheme, as evidenced by the addition of § 2F1.1(b)(3) to the Guidelines, is not adequately considered in the earlier version of the Guidelines *and* the fact that, based upon the SCAMS Act, the Sentencing Guidelines do not adequately take into consideration the unique evils inherent in telemarketing fraud upon the elderly.

In its Motion, the Government has noted an additional reason for an upward departure for Beasley. Beasley was convicted of theft by deception in Jackson County, Illinois, in 1995 based upon this same type of conduct. He was sentenced to 120 days in jail. After he served his time, he again continued his involvement in the telemarketing scheme. Obviously, the sentence imposed in Jackson County did not deter him from continued involvement in the same scheme. This conduct by Beasley is not adequately considered in the guidelines and provides further support for an upward departure.

Because this court has accepted the Government's recommendation of a four-level upward departure, Beasley's total offense level of 20 is increased to 24. However, this court has also granted the Government's Motion for a downward departure of one level pursuant to § 5K1.1 Therefore, Beasley's offense level is reduced to 23. With his criminal history category of IV, the guideline range is 70–87 months. Based upon the egregiousness of the crime, this court now imposes a sentence of 87 months for mail fraud and wire fraud. This court imposes a sentence of 36 months for IRS impersonation. These sentences are to be concurrent to the sentences imposed in Georgia in Case Nos. 98–CR–1660 and 99–B0029–4, with credit for time served from October 14, 1997, *but without regard to* the sentence imposed in Case No. 97–4449, Cobb County, Georgia. The further conditions of Beasley's sentence, including restitution of $128,237.21, are included in the judgment order.

## C. JEFFREY "J.J." THOMAS

The Government has recommended a three-level upward departure for Defendant Thomas. The Government states that Coe and Beasley should receive an upward departure of one level higher due to their greater responsibility in the success of the scheme. The court accepts this recommendation as reasonable. The court notes that Thomas pleaded guilty to charges of wire fraud and IRS impersonation, while Coe and Beasley pleaded guilty to charges of mail fraud, wire fraud and IRS impersonation. In addition, Coe and Beasley were given four-level enhancements based upon their role as organizers or leaders while Thomas was given a three-level enhancement based upon his role as a manager or supervisor in the offense.

This court concludes that an upward departure of three levels is warranted in this case. The upward departure is warranted based upon the fact that the aggravating factor of the harm which is caused

by the use of mass-marketing in the fraudulent scheme, as evidenced by the addition of § 2F1.1(b)(3) to the Guidelines, is not adequately considered in the earlier version of the Guidelines *and* the fact that, based upon the SCAMS Act, the Sentencing Guidelines do not adequately take into consideration the unique evils inherent in telemarketing fraud upon the elderly.

This court notes that another reason supports an upward departure for Thomas. Thomas has 19 criminal history points, enough to qualify him for criminal history category VIII, should the sentencing table be extended in increments of three that far. Accordingly, a criminal history category of VI does not adequately reflect the seriousness of Defendant's prior conduct or the likelihood that he will commit future crimes if given the opportunity. See *United States v. Melgar–Galvez,* 161 F.3d 1122, 1124 (7th Cir.1998); *United States v. Jenkins,* 32 F.Supp.2d 1024, 1025–26 (C.D.Ill.1999). Therefore, an upward departure is warranted for this reason also. See *Jenkins,* 32 F.Supp.2d at 1026.

Because this court has accepted the Government's recommendation of a three-level upward departure, Thomas's total offense level of 19 is increased to 22. With his criminal history category of VI, the guideline range is 84–105 months. This court again notes that Defendants' crimes in this case were truly egregious. However, because Thomas's culpability is less than that of Coe and Beasley, this court imposes a sentence of 87 months for wire fraud. This court imposes a sentence of 36 months for IRS impersonation. These sentences are to be concurrent to the sentence imposed in Georgia in Case No. 98–CR–1660, with credit for time served from December 3, 1997. The further conditions of Thomas's sentence, including restitution of $97,937.21, are included in the judgment order.