In the
United States Court of Appeals
For the Seventh Circuit

Nos. 99-3627, 99-3674 & 99-3699

United States of America,

Plaintiff-Appellee,

v.

George A. Coe, Jr., Jeffrey "J.J." Thomas,
and David T. Beasley,

Defendants-Appellants.

Appeals from the United States District Court
for the Central District of Illinois, Urbana Division.
No. 98-20031--Michael P. McCuskey, Judge.

Argued March 29, 2000--Decided July 18, 2000

Before Flaum, Ripple and Kanne, Circuit Judges.

Flaum, Circuit Judge. David Beasley, George Coe, and Jeffrey Thomas pled guilty to wire fraud and impersonating an Internal Revenue Service agent in violation of 18 U.S.C. sec.sec. 1343 and 912. Beasley and Coe also pled guilty to mail fraud in violation of 18 U.S.C. sec. 1341. All three defendants contest their sentences. For the reasons stated herein, we affirm the sentences imposed by the district court.

I. BACKGROUND

On December 21, 1994, defendants Beasley and Coe began running a mail and wire fraud scheme. Beginning in May 1995, they were joined by defendant Thomas, and the three continued the scheme until June 6, 1996. During these three years, the defendants contacted over 65 people, informing them that they had won various prizes which they could only claim by sending the defendants money for "taxes" and "fees" that had to be paid before the prizes could be awarded. As part of this scheme, Coe and Beasley occasionally represented themselves as IRS agents to their intended victims. All of the victims of the scheme were over the age of 55, and several victims who sent money were contacted more than once or by more than one defendant. For example, one elderly woman sent the defendants $34,480 in

fourteen separate wire transfers. In all, the defendants obtained a total of $171,139.22 from this scheme.

On May 7, 1998, the defendants were indicted and charged with multiple counts of violating the mail and wire fraud statutes, 18 U.S.C. sec.sec. 1341, 1343, as well as impersonating an IRS agent in violation of 18 U.S.C. sec. 912. All of the defendants pled guilty to one count each of wire fraud and impersonating an IRS agent. Defendants Coe and Beasley also pled guilty to one count of mail fraud. The district court sentenced the defendants according to the federal Sentencing Guidelines ("Guidelines") and enhanced Coe's and Beasley's sentences by four levels and Thomas' sentence by three levels. Thomas received a lower enhancement because the district court found that his role in the offense was minor relative to that of his co-defendants.

The district court based the upward departures for all three defendants on its findings that the defendants used mass marketing to commit their fraudulent scheme and that the defendants' fraud violated the Senior Citizens Against Marketing Scams ("SCAMS") Act, 18 U.S.C. sec. 2325 et seq. For each defendant, the district court also provided an alternate reason for the enhancement. The district court found that Coe's sentence merited an enhancement because, after being put on notice by federal agents that he was being investigated for fraud, he continued to perpetrate that fraud. The district court found that Beasley's sentence warranted an enhancement because he had recently been convicted of state crimes based on virtually identical fraudulent conduct. And, the district court found that Thomas' sentence merited an upward departure because his criminal history category did not adequately reflect the seriousness of his prior criminal conduct.

Each defendant received a 36 month sentence for IRS impersonation. On the other counts, Coe was sentenced to 78 months and Beasley and Thomas were sentenced to 87 months. All sentences except that imposed on Thomas were at the uppermost end of the Guidelines' sentencing range. Thomas received a more lenient sentence because of his lesser role in the fraud. The defendants now appeal the district court's calculation of their sentences.

II.  DISCUSSION
A.  Upward Departures

The defendants argue that the district court erred in applying upward departures to each of their sentences. When reviewing a district

court's decision to depart from the sentence indicated by a strict application of the Guidelines, we follow a three step approach. First, we review de novo whether the district court's stated grounds for departure may be relied on to justify the departure. Second, we review for clear error whether the facts that support the grounds for departure actually exist in the case, and third, we review for abuse of discretion whether the district court departed by a reasonable degree. United States v. Willey, 985 F.2d 1342, 1349 (7th Cir. 1993); see also United States v. Akindele, 84 F.3d 948, 953 (7th Cir. 1996); United States v. Boula, 997 F.2d 263, 266 (7th Cir. 1993). Using this framework, we now examine each of the grounds relied on by the district court for the upward departures.

1.   Mass-Marketing

     The district court's first stated reason for applying an upward departure to the defendants' sentences is that the defendants used mass marketing to perpetrate a fraud. The district court found that the defendants used the telephones and mails to induce a large number of persons to participate in their fraudulent scheme and that this conduct was particularly harmful in a manner that was not adequately considered by the Commission when it promulgated the 1996 Guidelines which were in effect when the defendants committed these crimes. In concluding that the 1996 Guidelines did not adequately account for this factor, the district court considered a later amendment to U.S.S.G. sec. 2F1.1, which took effect on November 1, 1998, that called for a two-level increase where mass marketing was used to effectuate a fraud. See U.S.S.G. sec. 2F1.1(3). The defendants argue that the district court's imposition of an upward departure on this basis effectively sentenced them under a later version of the Guidelines than the one in effect at the time they committed the crimes at issue here in violation of the Ex Post Facto Clause.

     It is a violation of the Ex Post Facto Clause for a court to sentence a defendant under an amendment to the Guidelines that makes the punishment for crimes committed before the effective date of the amendment more severe than it had been at the time the criminal activity took place. See United States v. Kopshever, 6 F.3d 1218, 1222-23 (7th Cir. 1993); Willey, 985 F.2d at 1350. Cf. Miller v. Florida, 482 U.S. 423, 435-36 (1987) (holding that the retroactive application of amendments to Florida's sentencing guidelines imposing harsher penalties for certain crimes than existed at the time the crimes were committed violated the Ex Post Facto Clause).

However, a sentencing court may consider subsequent Guideline amendments for two purposes. A court may interpret the Commission's later addition of an aggravating element as a sentencing factor as evidence that a previous version of the Guidelines did not adequately consider that factor in the sentencing scheme. See United States v. Porter, 145 F.3d 897, 906 (7th Cir. 1998); United States v. Rainone, 32 F.3d 1203, 1208 (7th Cir. 1994). A court may also consider later amendments as guides for determining how much of a departure is warranted for the aggravating conduct in question. See Akindele, 84 F.3d at 955; Boula, 997 F.2d at 267; Willey, 985 F.2d at 1348. In fact, since "a decision to depart must be linked to the rationale and methodology of the Guidelines," reference to subsequent amendments may be one of the best ways a sentencing court can be assured that the magnitude of a departure is consistent with the sentencing scheme envisioned by Congress. Akindele, 84 F.3d at 954-55.

We have in the past expressed our concern that these permissible uses of subsequent amendments to the Guidelines may "gut" the prohibitions imposed by the Ex Post Facto Clause in this area of the law. See Kopshever, 6 F.3d at 1223. For this reason, we have cautioned sentencing courts that subsequent amendments are only to be used as tools in making a well-reasoned, individualized determination of whether to impose an upward departure in a particular case or to determine the degree of departure that is warranted. See id. In addition, if the Commission considered aggravating circumstances in an earlier version of the Guidelines but elected not to include those circumstances as sentencing factors, departure on that basis is not warranted, even if the Commission later changes its mind and amends the Guidelines to account for the conduct in question. See Porter, 145 F.3d at 906; Akindele, 84 F.3d at 953; Kopshever, 6 F.3d at 1223. It is only where a circumstance is "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines" that a departure is warranted. U.S.S.G. sec. 5K2.0.

In this case, the district court found that the defendants' use of mass marketing to conduct their fraudulent scheme was an aggravating circumstance that was not adequately taken into consideration by the Commission in the 1996 Guidelines. The district court explicitly stated that it considered the Commission's later amendment of the Guidelines to include a two-level enhancement for this conduct solely as evidence that the Commission had not adequately considered this factor in earlier versions of the Guidelines and as a framework for determining the

degree to which a departure based on this conduct should enhance the defendants' sentences. As noted above, the district court was permitted to use the subsequent guideline amendment in this fashion, and we conclude that it did not err imposing an upward departure on this basis. We further conclude that the district court did not abuse its discretion in the degree to which it departed because the departure imposed tracks the subsequent amendment to the Guidelines and is, therefore, consistent with the Guidelines' rationale and methodology./1

The defendants also argue that there was an insufficient factual basis to support an upward departure under the mass marketing rationale. The district court found that the defendants used the telephones and mails to contact at least the 65 victims of their fraudulent scheme and that this number was sufficiently large to constitute a mass marketing scheme that took this case out of the heartland of fraud cases contemplated by the Guidelines. This conclusion is not clearly erroneous because there is ample evidence in the record to support it, and, therefore, we conclude that the district court did not err in finding that there is a sufficient factual basis to support an upward departure on this ground.

2. SCAMS Act

The district court also departed upward in sentencing the defendants based on its finding that their fraudulent conduct fell within the provisions of the SCAMS Act./2 Relying on the reasoning of the three circuit courts that have considered this issue,/3 the district court found that the Guidelines do not adequately take into account the unique harm to the elderly resulting from conduct that violates the SCAMS Act and that an upward departure on that basis was warranted in this case.

The defendants argue that an upward departure based on the SCAMS Act is impermissible because the harm targeted by that Act was considered by the Commission and is already adequately accounted for in the Guidelines. The defendants note that when the SCAMS Act was passed in 1994, Congress instructed the Commission to develop sentencing guidelines to implement the provisions of that Act. See Pub. L. 103-322 sec. 250003. The Commission responded with a report in 1995 stating that it would review the SCAMS Act, make any changes to the Guidelines that it considered necessary, and submit those changes to Congress by May 1, 1995. See Report to the Congress: Adequacy of Penalties for Fraud Offenses Involving Elderly Victims (March 1995). Since that time, although the Guidelines have been amended several times, the Commission has not

made any amendments that reference the SCAMS Act. While the Commission has recently increased penalties for the use of mass marketing in the perpetration of a fraud, the Commission did not alter the penalties for targeting vulnerable victims such as the elderly. See U.S.S.G. sec. 2F1.1(3), as amended effective November 1, 1998; U.S.S.G. sec. 3A1.1(b) and cmt. n. 2. The defendants argue that this lack of action by the Commission, after specifically informing Congress that it would review the SCAMS Act and amend the Guidelines as necessary, indicates that the Commission considered the circumstances outlined in the SCAMS Act and determined that the penalties provided in the Guidelines were sufficient to implement that Act. The defendants contend that because the circumstances that would constitute a violation of the SCAMS Act were considered by the Commission and determined to be adequately provided for in the existing Guidelines, an upward departure on this basis is not permitted under U.S.S.G. sec. 5K2.0, which allows for departures only where factors were "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." See also 18 U.S.C. sec. 3553(b); Akindele, 84 F.3d at 953 ("If the Commission has considered a factor, a departure is not justified.").

In Smith, the Tenth Circuit considered this argument and rejected it, finding that the Commission's mere lack of action was "insufficient evidence to conclude the Commission fully considered the existing guidelines and affirmatively determined their adequacy." 133 F.3d at 748. Likewise, we are unconvinced that the Commission's mere lack of action is adequate proof that the circumstances outlined in the SCAMS Act were considered by the Commission and that it determined that the existing Guidelines adequately implemented that Act. We are disinclined to draw the inference suggested by the defendants because the existing Guidelines, even including the 1998 amendment adding a two-level increase for use of mass marketing, do not provide for the sharply increased penalties called for by Congress in the SCAMS Act./4 We agree with our sister circuits that Congress determined that the conduct prohibited by the SCAMS Act merited more severe punishment than the Guidelines provide and that the Commission has yet to adequately consider the increased punishments recommended by Congress in that Act and incorporate them into the Guidelines. See Scrivener, 189 F.3d at 952-53; Brown, 147 F.3d at 487; Smith, 133 F.3d at 748-49. Therefore, under U.S.S.G. sec. 5K2.0 and 19 U.S.C. sec. 3553(b), the district court did not err when it used the defendants' violation of the provisions of the

SCAMS Act as a basis for adding an upward departure to their sentences.

The defendants also argue that the district court engaged in impermissible double counting when it imposed both an upward departure based on the SCAMS Act and enhanced their sentences under sec. 3A1.1(b)(1) by two-levels for targeting vulnerable victims. The district court imposed the departure under the SCAMS Act because it found that the defendants 1) targeted the elderly, 2) used telemarketing to perpetrate their scam, and 3) victimized ten or more persons over the age of 55. The district court imposed the sec. 3A1.1 enhancement because it found that the defendants used "lead lists" to target persons they believed were especially vulnerable because they had given money in response to solicitation efforts in the past and because the defendants themselves re-contacted several of the elderly persons who responded favorably to their fraudulent solicitations. See United States v. Jackson, 95 F.3d 500, 508 (7th Cir. 1996) (holding that the use of this "reloading" technique is sufficient to sustain an enhancement under sec. 3A1.1(b)). It is clear from the district court's thorough and well-reasoned discussion that it imposed the upward departure and the sec. 3A1.1 enhancement based on two different features of the defendants' conduct. We conclude that the district court did not punish the defendants twice for the same conduct but rather imposed an enhancement and a departure based on distinct circumstances that independently supported separate increases in the defendants' sentences.

3. Individual Defendants

In addition to providing the two grounds for departure discussed above, the district court also concluded that there were alternate grounds unique to each defendant for imposing upward departures to their individual sentences. The court determined that defendant Coe merited a departure based on his continuing criminal conduct after he had been contacted by law enforcement officials regarding a criminal investigation of that conduct, defendant Beasley merited a departure based on his previous state conviction for virtually identical criminal conduct, and defendant Thomas merited a departure due to his extensive criminal history that was not adequately captured by the criminal history category he was assigned. Because we have concluded that the upward departures were justified by the district court's primary reasons for imposing them, we need not address the validity of its alternate reasoning. However, we appreciate the extensive amount of consideration

that the district court devoted to its determination of the appropriate sentences warranted by the defendants' conduct and commend the court for its clear explanation of the reasoning behind its decisions. We note that the alternate reasons provided by the district court for imposing upward departures in this case are sound and that the district court would not have erred had it imposed the departures solely on those bases. See, e.g., United States v. Ewing, 129 F.3d 430, 437 (7th Cir. 1997) (finding that previous convictions for similar conduct justify an upward departure); United States v. Anderson, 72 F.3d 563, 566 (7th Cir. 1995) (same); U.S.S.G. sec. 4A1.3 (authorizing an upward departure "[i]f reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct.").

B. Impersonation of an IRS Agent

The district court sentenced each defendant to 36 months in prison for impersonation of an IRS agent in violation of 18 U.S.C. sec. 912 to be served concurrently with the longer sentences imposed for mail and wire fraud. Defendant Thomas contests his receiving a sentence for this offense that is equal in length to that imposed on his co-defendants. Thomas argues that he did not personally impersonate an IRS agent but pled guilty to this charge solely on the basis of his accountability for the actions of his co-defendants. Thomas contends that because he is guilty only by association he should receive a lesser sentence than his co-defendants who actually engaged in the criminal activity.

Our jurisdiction to review a district court's imposition of a sentence under the Guidelines is strictly limited by 18 U.S.C. sec. 3742(a). Under that section, we may review a guidelines sentence only to determine if it 1) was imposed in violation of law; 2) was imposed as a result of an incorrect application of the sentencing guidelines; 3) is greater than the maximum sentence specified in the applicable guidelines range; or 4) was imposed for an offense for which there is no applicable guideline and is plainly unreasonable. See United States v. Nelson, 143 F.3d 373, 374 (7th Cir. 1998). Here, defendant Thomas makes no argument that the district court's imposition of a sentence within the applicable guidelines range for the offense to which he pled guilty was either in violation of law or was an incorrect application of the Guidelines. He merely argues that the district court should have been more lenient. We have repeatedly held that sec. 3742 does not confer appellate jurisdiction to review a defendant's

claim that he was sentenced differently from his co-defendants for the same criminal conduct. See United States v. Hall, Nos. 98-2649, 99-1933, 2000 WL 626721, at *2 (7th Cir. May 16, 2000); United States v. Edwards, 945 F.2d 1387, 1397-98 (7th Cir.1991); United States v. Smith, 897 F.2d 909, 911 (7th Cir.1990). Similarly, we do not have jurisdiction to review a claim that the defendant was not treated differently than his co-defendants when he argues that he should have been. See United States v. Guerrero, 894 F.2d 261, 267-68 (7th Cir. 1990) (holding that we lack jurisdiction to review reasonable sentences imposed lawfully within the applicable guidelines' range based solely on the argument that the sentence was too lenient or too draconian); see also United States v. Cea, 914 F.2d 881, 889 (7th Cir. 1990). We, therefore, lack jurisdiction to consider defendant Thomas' claim.

C.  U.S.S.G. sec. 3A1.1(b)

Defendants Beasley and Thomas challenge the district court's enhancement of their sentences pursuant to U.S.S.G. sec. 3A1.1(b). As noted above, the district court imposed this enhancement based upon its finding that the defendants "reloaded" their victims by targeting individuals whom they knew had responded to solicitations in the past and even re-contacting several individuals who had previously sent money in response to the defendants' scam. The defendants argue that the district court erred in concluding that the facts in the record support an enhancement of their sentences under sec. 3A1.1(b). We review the district court's factual findings in support of sentencing determinations for clear error and that court's application of the Guidelines to those facts for abuse of discretion. 18 U.S.C. sec.3742(e); see Guerrero, 894 F.2d at 267-68.

There is ample support in the record that all three of the defendants targeted victims they knew were particularly susceptible to their fraud because they had given money in response to this particular solicitation or similar solicitations in the past. The defendants have presented no evidence that these factual findings were clearly erroneous. In addition, we have previously held that "reloading" victims in a telemarketing fraud scheme is conduct that merits an enhancement under sec. 3A1.1. See Jackson, 95 F.3d at 508. The defendants have pointed to nothing that distinguishes their conduct from that of the defendants in Jackson, and we conclude that the district court did not abuse its discretion by enhancing their sentences under sec. 3A1.1 of the Guidelines.

D.  Discovery Violation

Prior to sentencing, defendant Coe made a discovery request pursuant to Federal Rule of Criminal Procedure 16 in response to which the Government provided typewritten reports summarizing conversations between defendant Coe and the federal agents who were investigating his fraudulent activities. At the sentencing hearing the government moved to admit into evidence the agents' handwritten notes of those same conversations. Coe argues that the district court erred in admitting these notes into evidence because they were not turned over in response to Coe's discovery request.

In United States v. Muhammed, 120 F.3d 688, 699 (7th Cir. 1997), we held that the government satisfies the requirements of Rule 16 if it turns over a written report that contains all of the information found in an agent's original notes but does not deliver the notes themselves to the defendant. In this case, the district court found that the reports given to the defendants in response to their Rule 16 request accurately reflect all of the information provided in the handwritten notes that were later entered into evidence by the district court. While the defendant points to certain minor discrepancies between the notes and the report, we cannot conclude that the district court abused its discretion in determining that the report was an adequate summation of the notes for Rule 16 purposes. Therefore, we conclude that the district court did not err in admitting the agents' notes.

III.  CONCLUSION

For the foregoing reasons, the sentences imposed by the district court are Affirmed.

/1 The district court stated that it based its imposition of sentencing departures on both the use of mass marketing and the SCAMS Act. Although the district court did not explicitly state the number of levels it was departing for each separate rationale, we presume from the court's discussion that it enhanced the defendants' sentences by two levels for each rationale as requested by the government, resulting in a total upward departure of four levels for defendants Coe and Beasley. As defendant Thomas received only a three-level departure, we presume that the district court opted to depart upward by only one level for either the use mass marketing or the violation of the SCAMS Act. Either a one- or two-level departure is appropriate for each rationale employed by the district court.

/2 The SCAMS Act, 18 U.S.C. sec. 2326, provides in relevant part:

A person who is convicted of an offense under section . . . 1341, . . . 1343. . . in connection with the conduct of telemarketing--

(1)  shall be imprisoned for a term of up to 5 years in addition to any term of imprisonment imposed under any of those sections, respectively; and

(2)  in the case of an offense under any of those sections that--

(A)   victimized ten or more persons over the age of 55; or

(B)  targeted persons over the age of 55,

shall be imprisoned for a term of up to 10 years in addition to any term of imprisonment imposed under any of those sections, respectively.

/3 See United States v. Scrivener, 189 F.3d 944 (9th Cir. 1999); United States v. Brown, 147 F.3d 477 (6th Cir. 1998); United States v. Smith, 133 F.3d 737 (10th Cir. 1997).

/4 For example, H.R. Rep. 105-158 sec. 3 recommended a four-level increase for violations of sec. 2326(1) and an eight-level increase for violations of sec. 2326(2). The current Guidelines provide only a two-level increase for conduct that violates sec. 1341 using a mass marketing scheme. See U.S.S.G. sec. 2F1.1(3). Conduct that violates sec. 1341 by using mass marketing in addition to either specifically targeting elderly victims or defrauding multiple elderly victims receives only a four-level enhancement. See U.S.S.G. sec.sec. 2F1.1(3), 3A1.1(b).