**UNITED STATES of America**

v.

**David M. GRIGGS, a/k/a David Briggs, a/k/a David Greggs, a/k/a James Brook, a/k/a David Drummond, and Eric Spencer Saunders, a/k/a Eric Spencer, Defendants.**

**No. 4:CR–00–0072.**

United States District Court,
M.D. Pennsylvania.

Aug. 15, 2000.

John J. McCann, Assistant U.S. Atty., United States Attorney's office, Williamsport, PA, for Government Counsel.

D. Toni Byrd, Assistant Federal Public Defender, Williamsport, PA, for defendant Saunders.

Douglas B. Chester, Spring Mills, PA, for defendant Griggs.

## *MEMORANDUM*

McCLURE, District Judge.

## *BACKGROUND:*

On March 8, 2000, a grand jury sitting in the Middle District of Pennsylvania returned an indictment charging defendants David M. Griggs and Eric Spencer Saunders with possession with intent to distribute in excess of 50 grams of cocaine base (crack cocaine), in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii). Both defendants entered pleas of not guilty at arraignment on March 29, 2000 (Griggs), and April 11, 2000 (Saunders). Jury selection currently is scheduled for September 6, 2000.

Before the court is a motion by Saunders to compel discovery. A pending motion by Saunders to suppress evidence will be addressed by separate order, an evidentiary hearing on the motion having been held August 11, 2000.

## *DISCUSSION:*

### *I. STATEMENT OF FACTS*

Because this is a criminal matter, of course, no record has been created from which the court may recite established facts.[1] The following facts are presented in the parties' briefs and are set forth only for the purpose of placing the legal discussion into context. Factual matters relating to the issue of probable cause are omitted.

---

1. On August 11, 2000, the court heard testimony and received exhibits regarding the motion to suppress, but has not yet ruled on the motion. That evidence is not utilized in this memorandum.

On February 29, 2000, at approximately 9:15 p.m., Corporal Terrance Jankouskas of the Pennsylvania State Police was patrolling Interstate Highway 80 in Luzerne County, Pennsylvania. He conducted a traffic stop of a vehicle driven by Saunders with Griggs, the owner, in the passenger seat. After obtaining consent to search the vehicle, Jankouskas found a quantity of crack cocaine hidden in a hoagie [2] wrapper. Saunders and Griggs were arrested and given their *Miranda* warnings. Saunders admitted to driving Griggs to Philadelphia to get the crack and to being a user himself. At the Hazleton State Police Barracks, Saunders signed a written waiver of his *Miranda* rights, then gave a full statement inculpating himself. According to the government, he admitted to having transported crack for Griggs on previous occasions and to knowing that the crack was in the vehicle on this occasion.

On May 24, 2000, counsel for Saunders was given copies of the relevant State Police report concerning the instant charges, copies of a laboratory report showing that 82.8 grams of crack was found, and the substance of all statements of the defendant. The notes made by the interrogating officers were not provided, however.

## II. DISCOVERY OF ITEMS SOUGHT

Saunders seeks three items or classes of items: a written warning issued after the traffic stop by the arresting officer; information relating to open case files and investigations which are referenced in the police reports provided in discovery; and handwritten notes of the interview of Saunders following his arrest.

The government indicates in its brief in opposition to the motion to compel that the written warning relating to the traffic stop has been provided, and, indeed, the same was presented as the government's first exhibit at the suppression hearing. This request is therefore moot.

Saunders cites no authority for the proposition that he is entitled to discovery of investigative reports generally, and we are aware of none. That request will be denied.

■ The government opposes disclosure of the rough notes of interview because it already has provided a copy of a typewritten version of the statement prepared from the rough notes. The governing rule provides in part:

> Upon request of a defendant the government must disclose to the defendant and make available for inspection, copying, or photographing: ... that portion of any written record containing the substance of any relevant oral statement made by the defendant whether before or after arrest in response to interrogation by any person then known to the defendant to be a government agent;
>
> ...

Fed.R.Crim.P. 16(a)(1)(A). The statement which would be contained in the rough notes was made to a Trooper with the Pennsylvania State Police, not a "government agent." *See generally United States v. Brazel,* 102 F.3d 1120, 1150 (11th Cir.) (evidence possessed by local law enforcement offices not in possession of "government"), *cert. denied,* 522 U.S. 822, 118 S.Ct. 78, 79, 139 L.Ed.2d 37 (1997); *United States v. Ramos,* 27 F.3d 65, 71–72 (3d Cir.1994) (municipal police officers not federal agents for purposes of rule requiring preservation of rough notes of interview); Fed.R.Crim.P. 54(c)("attorney for the government" refers to Attorney General, U.S. Attorney, and their assistants, and attorneys authorized to act on behalf of territories); 18 U.S.C. § 6 (for purposes of Title 18, "agency" refers to department, independent establishment, etc., of the United States). *But see United States v. Burns,*

---

**2.** For readers unfamiliar with the word, "hoagie," also spelled "hoagy," is a regional variation of "hero sandwich," used in Pennsylvania and New Jersey, but primarily Philadelphia. THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 908 (2d ed.1987).

15 F.3d 211, 214 (1st Cir.1994) (noting in dicta that a "government agent" would include persons with criminal law enforcement responsibilities, not limited to federal officers; the latter portion of the definition is dicta because the agent in question was a Postal Service employee). While it is not clear that handwritten notes of an interview must be disclosed under Rule 16(a), as opposed to *Brady v. Maryland,* see *United States v. Coe,* 220 F.3d 573, 583 (7th Cir.2000) (rough notes need not be provided under Rule 16 if government provides written report containing all information in agent's notes), it is clear that Saunders would not have known that the State Troopers were agents or potential agents of the federal government at the time that he gave the statement. *Cf. United States v. Bailey,* 123 F.3d 1381, 1399 (11th Cir. 1997) (oral statement not subject to disclosure because defendant did not know that person to whom he gave statement was a government agent).

█ We believe that, at a minimum, the "agent" must be (1) an agent employed by a federal entity, (2) a person acting on behalf of a federal entity such as a confidential informant, or (3) a person allied with the prosecution once a federal investigation or prosecution commences, such as a state officer working on a joint task force or with the U.S. Attorney's Office. Since, at the time that Saunders' statement was given, the Troopers did not fit any of these descriptions, they were not "government agents."

We are constrained to note, however, the fundamental unfairness which the operation of Rule 16(a)(1)(A) works in this case. If Saunders had made his statement to a DEA agent or an FBI agent, the notes likely would be discoverable, despite *Coe,* because the language of the rule is to the effect that *any* written record of an oral statement by the defendant to a

known government agent must be disclosed. *See United States v. Fritz,* No. 4:CR–99–0042 (M.D.Pa. Aug. 9, 1999) (Muir, J.).[3] It is only because Saunders' statement was made to a state law enforcement officer that the notes are not discoverable.

In addition to that unfairness, there is the likelihood that the rough notes contain impeachment material. *See Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) (government must disclose evidence which is exculpatory and material to the defense); *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (impeachment evidence is *Brady* material). In *Ramos,* the Third Circuit recognized the value of rough notes as impeachment material. 27 F.3d at 70. *See also United States v. Pelullo,* 105 F.3d 117, 122 (3d Cir.1997). However, it stopped short of holding that rough notes must be presumed to constitute *Brady* material, instead concluding that the defendant in that case had failed to demonstrate the exculpatory nature of destroyed notes, and that concluding that the notes were *Brady* material was speculation. *Ramos* at 71.

The problem here is that the court has no opportunity to undertake the usual *Brady* analysis, i.e. to consider whether the questioned evidence would have been favorable to the defense and whether there is a reasonable probability that, had the evidence been disclosed to the defense, the outcome of the trial would have been different. *Pelullo* at 123. *See also United States v. Kimssy,* No. 4:CV–99–0252, slip op. at 5 (M.D.Pa. May 17, 2000) (McClure, J.; noting difficulty of reviewing pre-trial motion for *Brady* material due to lack of context; citing *Strickler v. Greene,* 527 U.S. 263, 266, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). We have not been provided with a copy of the rough notes and we do

---

**3.** In *Fritz,* Judge Muir ordered disclosure of the notes of interrogation by "law enforcement agents" under Rule 16(a)(1)(A) because they contained the substance of the defen-

dant's oral statement. The issue of whether the law enforcement agents were federal agents was not raised.

not know the defense theory of the case (to determine the impeachment value or otherwise exculpatory nature of the notes), nor have we heard the other evidence in the case (to determine the materiality of the notes).

Also, we question our authority to order disclosure of potential *Brady* material under these circumstances, since the initial decision regarding whether to make such disclosure rests with the government.

The Third Circuit appears to take a more restrictive approach to discovery in criminal matters than other Courts of Appeals. In *Ramos,* the Third Circuit pointed out that Rule 16 delineates the categories of material which are discoverable, supplemented only by statutory pronouncements and the Due Process Clause. *Ramos* at 68.

In contrast, the Fifth Circuit has recognized an inherent authority on the part of a district court to take actions which are "reasonably useful to achieve justice." *United States v. Webster,* 162 F.3d 308, 339 (5th Cir.1998) (citation omitted), *cert. denied,* —— U.S. ——, 120 S.Ct. 83, 145 L.Ed.2d 70 (1999). This power would include the administration of criminal discovery. *Id.* While a district court could not exercise this power in contravention of a rule, statute, or constitutional provision, it could exercise its power in a manner consistent with such authorities. *Id.* (citing Fed.R.Crim.P. 57(b)). The Fifth Circuit also pointed out that federal courts have "supervisory powers" to "formulate procedural rules not specifically required by the Constitution or the Congress ... to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before the jury..." *Id.* (quoting *United States v. Hasting,* 461 U.S. 499, 505, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)).

■ Given the limiting language in *Ramos,* it seems unlikely that the Third Circuit would recognize as broad an authority to regulate discovery or countenance a wide-ranging exercise of any inherent authority on the part of the district courts in such matters. However, we think that the language of Rule 57(b) does give some authority to permit discovery not specifically required by Rule 16.

We emphasize, however, that our holding is limited. We have taken what may be considered a narrow view of "government agent" as that term is used in Rule 16(a)(1)(A). Because of that view, this defendant is not entitled under Rule 16 to discovery material which would be available to other defendants in similar situations, with the only difference being the employer of the person to whom a statement is given. That is, another defendant may be arrested in the same manner as Saunders, be charged with the same crime as Saunders, give the same statement in response to the same questions during interrogation, and have the arresting agent take the same notes, and yet the notes are discoverable in one case and not the other. In addition, the notes are a matter of considerable importance to a defendant, given the potential (actually, likelihood) that they constitute, or at least contain, *Brady* material.

Thus, our conclusion that the notes should be the subject of discovery is more than merely holding that ordering the notes is consistent with and does not violate the Federal Rules of Criminal Procedure and the Constitution. We believe that ordering disclosure of the notes is necessary to effectuate the purpose of Rule 16(a)(1)(A)[4] and to prevent a likely *Brady* problem, in circumstances which are unfair on their face. It is only under such conditions that we believe a *limited* exercise of our *limited* authority is appro-

---

4. *See* Rule 16, Advisory Committee Notes, 1991 Amendment (Rule 16(a)(1)(A) expanded to cover oral statements by defendant in response to interrogation because "the defen-

dant has some proprietary interest in statements made during interrogations regardless of the prosecution's intent to make any use of the statements").

priate, and this order should not be construed as broadening discovery in any significant way.

Saunders' request for the rough notes of the interrogation by the Pennsylvania State Police after he was arrested on February 29, 2000, will be granted.

\* \* \* \* \* \*

An order consistent with this memorandum will issue.

### ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Defendant Eric Spencer Saunders' motion (record document no. 31) to compel discovery is granted in part and denied in part.

2. The motion insofar as it constitutes a request for discovery of the written warning issued by the arresting officer on February 29, 2000, is denied as moot.

3. The motion insofar as it constitutes a request for discovery of investigative reports relating to other matters is denied.

4. The motion insofar as it constitutes a request for discovery of the written notes taken by the officer or officers who interrogated Saunders on February 29, 2000, otherwise denominated the officers' "rough notes," is granted.

5. The government shall provide copies of the officers' rough notes, or shall make the rough notes available for inspection and copying by counsel for Saunders, within fifteen days from the date of this order.

6. The government may redact from the rough notes any material that is not the substance of any relevant oral statement by Saunders.