# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 9, 2013

Lyle W. Cayce
Clerk

———————

No. 13-60069
No. 13-60070

———————

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

KEVIN COE,

Defendant–Appellant.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

———————

No. 13-60091

———————

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

versus

JARVIS JONES,

Defendant–Appellant.

Appeals from the United States District Court
for the Northern District of Mississippi
No. 2:10-CR-78-7
No. 2:10-CR-78-6

Before STEWART, Chief Judge, JOLLY and SMITH, Circuit Judges.

JERRY E. SMITH, Circuit Judge:*

Kevin Coe and Jarvis Jones were runners in a fraudulent telemarketing scheme. The plot operated by informing elderly individuals that they had won prize money from a fictitious sweepstakes, but, before any money could be sent to them, they needed to wire the taxes and other fees to members of the scheme. Coe and Jones pleaded guilty to one count of conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349. They appeal their sentences.

Because the district court did not clearly err in applying the vulnerable-victim enhancement and in not applying the minor-participant reduction, we affirm the sentences in part. Because, however, the court plainly erred in imposing enhancements under U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") §§ 2B1.1(b)(2)(B) and 3A1.1(b)(2), we vacate the sentences in part and remand for resentencing.

I.

Between January 2008 and July 2009, George Coe, Jr., David Beasley,

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60069
No. 13-60070
No. 13-60091

and Patrick Beasley made a series of fraudulent telephone calls to persons throughout the United States and told them they had won prize money from a fictitious sweepstakes or prize event.[1]  The victims were advised that they would not be sent the winnings until the taxes or other fees had been paid.  The victims wired money to various locations where a runner[2] would pick up the money at Western Union or MoneyGram, keep part of it, and transfer the remainder to the person who had called the victim.  The victims received no money or other benefit.  The eight co-conspirators victimized 91 individuals, 61 of whom were over the age of 55.

Additionally, George Coe, Jr., Patrick Beasley, and David Beasley would call someone who had already been victimized by the scheme one or more times, falsely stating that the original transfer has not been successful, to induce the victim to send even more money.  Several victims wired money to the co-conspirators multiple times on the same day, which the runner would then obtain.

A federal grand jury returned a thirteen-count indictment naming Kevin Coe, Jarvis Jones, and the six others.  Coe and Jones[3] were charged in one count of conspiracy to commit wire fraud and two counts of committing wire

---

[1] Because we are familiar with the facts, having heard appeals from many of the co-conspirators, we summarize the relevant facts for purposes of Coe's and Jones's appeals.  *See United States v. Allen*, No. 12-60302, 2013 WL 3285686, at *5–6 (5th Cir. Apr. 8, 2013) (per curiam) (unpublished), *cert. denied*, 134 S. Ct. 276 (2013); *United States v. Thomas*, 476 F. App'x 14, 15 (5th Cir. 2012); *United States v. Beasley*, 481 F. App'x 142 (5th Cir. 2012).

[2] The runners were Timothy Allen, Kevin Coe, Jarvis Jones, Christina Richards, and Scott Thomas.

[3] Coe and Jones come to us in similar procedural postures, and each raises the same sentencing issue (although each also raises one unique issue).  We have therefore consolidated their appeals for purposes of this opinion.

3

No. 13-60069
No. 13-60070
No. 13-60091

fraud; they entered guilty pleas to conspiracy to commit wire fraud in violation of 18 U.S.C. §§ 1343 and 1349.

Coe's and Jones's presentence reports ("PSRs") computed their base offense levels to be 7 and increased that level by fourteen pursuant to § 2B1.1(b)(1)(H), holding each responsible for a $448,084 loss. Their PSRs also recommended three adjustments: (1) a four-level enhancement pursuant to § 2B1.1(b)(2)(B) because the offense involved fifty or more victims; (2) a two-level reduction pursuant to § 3B1.2(b) because the PSR determined them to be minor participants in the conspiracy; and (3) a three-level reduction for acceptance of responsibility, for a net offense level of 20.

Coe received eight criminal history points, which established a criminal history category of IV; his PSR thus listed his guideline range as 51 to 63 months' imprisonment. Jones received five criminal history points, which established a criminal history category of III; his PSR listed his guideline range as 41 to 51 months.

The government filed the same three objections to both PSRs. First, it objected to the two-level minor-participant reduction. Second, because the government believed Coe and Jones knew or should have known that victims of this offense were vulnerable, it objected to the PSRs' failure to recommend the two-level vulnerable-victims enhancement. Finally, the government objected to the PSRs' failure to include two additional levels under § 3A1.1(b)(2) because of the large number of vulnerable victims.

The district court sustained all three of the government's objections for both defendants. It determined a guideline range of 92 to 115 months for Coe and 78 to 97 months for Jones. It sentenced Coe to 92 months and Jones to 88 months and imposed $204,915.06 in restitution to be paid jointly and severally

4

No. 13-60069
No. 13-60070
No. 13-60091

among Jones, Coe, and any other defendants convicted in this case.

The parties, however, later became aware that the court had erred in applying the § 3A1.1(b)(2) enhancement.[4]  The court therefore held another sentencing hearing at which it (1) calculated Coe's new guideline range to be 77 to 96 months and (2) sentenced him to 80 months; likewise, the court (1) calculated Jones's new guideline range as 63 to 78 months and (2) sentenced him to 71 months.

Coe and Jones appealed their sentences, but because the district court had corrected the sentences after the fourteen days allowed by Federal Rule of Criminal Procedure 35, we determined that the district court lacked jurisdiction to reconsider the sentences.[5]  Because the court had not entered judgment on the original sentences, we dismissed the appeal for lack of jurisdiction;[6] the district court has since entered judgment on the original sentences.

On this second appeal, Coe argues that the district court erred by not applying the minimal-participant reduction; Jones contends that the court erred by imposing the vulnerable-victim adjustment.  Both additionally maintain that the court erred by imposing the large-number-of-vulnerable-victims enhancement.

## II.

Pursuant to *Gall v. United States*, 552 U.S. 38, 49–51 (2007), this court

---

[4] Because the district court had also applied the § 2B1.1(b)(2)(B) enhancement, it could not have applied the § 3A1.1(b)(2) enhancement in addition.

[5] *See United States v. Coe*, 482 F. App'x 957, 957–58 (5th Cir. 2012) (per curiam)); *United States v. Jones*, 482 F. App'x 956, 956 (5th Cir. 2012) (per curiam).

[6] *See Coe*, 482 F. App'x at 957–58; *Jones*, 482 F. App'x at 956.

No. 13-60069
No. 13-60070
No. 13-60091

engages in a bifurcated review of a sentence. *United States v. Delgado-Martinez,* 564 F.3d 750, 752 (5th Cir. 2009). First, we consider whether the district court committed a "significant procedural error," such as miscalculating the advisory guideline range. *Id.* at 752–53. If the court did not commit procedural error or the error is harmless, we may proceed to the second step and review the substantive reasonableness of the sentence for an abuse of discretion. *Id.* at 753.

"Where a defendant objects at sentencing, we review the district court's findings of fact for clear error and its conclusions of law *de novo.*" *United States v. Anderson*, 559 F.3d 348, 354 (5th Cir. 2009). Factual findings are not clearly erroneous if the district court could have plausibly made them "in light of the record as a whole." *United States v. Alford*, 142 F.3d 825, 831 (5th Cir. 1998) (quoting *United States v. Sanders*, 942 F.2d 894, 897 (5th Cir. 1991)).

We review for clear error a determination that a defendant qualifies for an offense-level adjustment for a mitigating role. *United States v. Valencia*, 44 F.3d 269, 272 (5th Cir. 1995). A party seeking an adjustment to the base offense level "bears the burden of proving by a preponderance of the evidence that the adjustment is warranted." *See United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001). The sentencing court may "consider all relevant evidence, even inadmissible evidence, in determining whether an adjustment is warranted so long as the evidence has a 'sufficient indicia of reliability to support its probable accuracy.'" *Id.* (quoting *United States v. Patterson*, 962 F.2d 409, 414 (5th Cir. 1992)).

Similarly, we consider a determination of vulnerability to be a factual finding "which the district court is in the best position to gauge [because it] had the opportunity to observe the victim in court." *United States v. Rocha*, 916

No. 13-60069
No. 13-60070
No. 13-60091

F.2d 219, 244 (5th Cir. 1990).  In light of the complex factual decisions that the district court must make, we give due deference to its "determination of the victim's vulnerability" and its "determination of what the defendant knew or should have known."  *See id.*

Where the defendant did not object, we review only for plain error.  *See United States v. Mares*, 402 F.3d 511, 520 (5th Cir. 2005).  To succeed, the defendant needs to show that (1) the district court erred; (2) the error is plain; (3) the error affects substantial rights; and (4) the error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."  *See id.* (quoting *United States v. Cotton*, 535 U.S. 625, 631 (2002)).  Even in the context of plain error, we consider the "error" prong *de novo*.  *United States v. Garza-Lopez*, 410 F.3d 268, 272–73 (5th Cir. 2005).

### III.

Coe argues that the district court erred by not considering him to be a "minimal participant" under § 3B1.2(b).  Coe asserts that he was responsible for a smaller monetary amount and fewer victims than was his co-conspirator, Jarvis Jones.[7]

Section 3B1.2 provides that a district court must reduce the offense level by four if it determines that the defendant was a "minimal participant" or by two if he was a "minor participant."[8]  A "minor participant" is an individual "who is less culpable than most other participants, but whose role could not be

---

[7] Jones does not present this argument on appeal.

[8] The comments to § 3B1.2(b) also make clear that this adjustment applies only if "more than one participant was involved in the offense."  *Id.* § 3B1.2 cmt. n.2.

No. 13-60069
No. 13-60070
No. 13-60091

described as minimal." *Id.* § 3B1.2 cmt. n.5.[9] To be eligible for an adjustment under this section, the defendant must be "substantially less culpable than the average participant." *Id.* cmt. n.3.[10] Even if a defendant can show that he was less culpable than other co-defendants, that fact "does not automatically qualify [him] for either minor or minimal participant status." *United States v. Atanda,* 60 F.3d 196, 198 n.1 (5th Cir. 1995). To be a minor participant, he "must be peripheral to the advancement of the criminal activity." *United States v. Martinez-Larraga,* 517 F.3d 258, 272 (5th Cir. 2008).

The sentencing court should consider "all relevant conduct . . . 'not solely on the basis of elements and acts cited in the count of conviction.'" *United States v. Garcia,* 242 F.3d 593, 598 (5th Cir. 2001) (quoting U.S.S.G. ch. 3, pt. B, introductory cmt. (2013)). Specifically, the court "must take into account the broad context of the defendant's offense."[11] The court must "articulate the factual basis for the finding that [defendant] was an average participant." *United States v. Melton,* 930 F.2d 1096, 1099 (5th Cir. 1991). "[A] simple statement[, however,] that the defendant was not a minor participant' will suffice as a factual finding." *United States v. Gallegos,* 868 F.2d 711, 713 (5th Cir. 1989).

The district court divided the members of the conspiracy into two categories: "the three leaders and the rest of them being what I would deem and

---

[9] A "minimal participant" is an individual "who [is] plainly among the least culpable of those involved in the conduct of a group." *Id.* cmt. n.4.

[10] *See also United States v. Angeles-Mendoza,* 407 F.3d 742, 753 (5th Cir. 2005) (quoting *United States v. Garcia,* 242 F.3d 593, 598 (5th Cir. 2001)).

[11] *United States v. Brown,* 54 F.3d 234, 241 (5th Cir. 1995); *see also United States v. Melton,* 930 F.2d 1096, 1099 (5th Cir. 1991) ("The commentary to § 3B1.2 provides that the determination of a defendant's status as a minor participant is 'heavily dependent upon the facts of the particular case.' The determination of participant status is a complex fact question, which requires the court to consider the broad context of the defendant's crime.").

No. 13-60069
No. 13-60070
No. 13-60091

have deemed as average." Although the court considered Jones and Coe average participants, it agreed with Coe that he and Jones did not have identical roles: "[I]n terms of money received and number of transactions [] Mr. Coe's numbers are different than [sic] Mr. Jones'[s]."

In spite of recognizing the differences between Jones's and Coe's involvement, the court found that Coe's was not "merely peripheral." The court made three findings to justify that conclusion: (1) "[Coe] had full knowledge of the whole scheme . . . [and was] aware of the entire scheme"; (2) Coe actively participated in the scheme;[12] and (3) every member played an important role in the operation of this type of wire-fraud conspiracy.[13]

The court did not clearly err in finding that Coe's involvement in the wire-fraud conspiracy was not "merely peripheral." First, two other runners in that conspiracy did not receive minor-role adjustments.[14] In upholding the refusal to grant those reductions in those two cases, this court rejected arguments similar to the one Coe presses.[15] Second, even though Coe can show that Jones was more culpable than he was, that fact "does not automatically qualify [him] for either minor or minimal participant status." *Atanda*, 60 F.3d at 198. The court did not, therefore, err in declining to impose a minor-participant reduction.

---

[12] Coe was "very actively involved in the scheme to the extent that you participated in 19 transactions. [Coe was] involved with 13 different victims, three of which were reloaded as many times as four times. [Coe] traveled to seven different states, and [] received $53,000."

[13] "And if anything that I've come to appreciate about this scheme is how important it was for every person to play their [sic] particular role and how all roles were essential. Whether you were supplying the lead list, making the phone calls, or picking up the money and reimbursing it to the leaders in this case, everybody played a very important role."

[14] *See Allen*, 2013 WL 3285686, at *4–5; *Thomas*, 476 F. App'x at 15–16.

[15] *See Allen*, 2013 WL 3285686, at *5; *Thomas*, 476 F. App'x at 16.

No. 13-60069
No. 13-60070
No. 13-60091

IV.

Jones claims the district court erred in applying the two-level vulnerable-victim adjustment under § 3A1.1. Jones reasons that because he had limited knowledge of the conspiracy, a person in his position would not have known the vulnerability of the victims.[16]

A court must increase an offense level by two if it determines that the defendant "knew or should have known that a victim of the offense was a vulnerable victim." § 3A1.1(b)(1). A "vulnerable victim" is "a person (A) who is a victim of the offense of conviction . . . and (B) who is unusually vulnerable due to age, physical or mental condition, or who is otherwise particularly susceptible to the criminal conduct." § 3A1.1 cmt. n.2. Section 3A.1.1(b) does not apply, however, "if the factor that makes the person a vulnerable victim is incorporated in the offense guideline." *Id.*

Section 3A1.1(b)(1) "is primarily concerned with the impaired capacity of the victim to detect or prevent crime, or a victim who is less able to resist than the typical victim of the offense." *United States v. Wilcox*, 631 F.3d 740, 755 (5th Cir. 2011) (citations and internal quotation marks omitted). The victims must have "an 'unusual' vulnerability" that applies to only some of the victims. *United States v. Moree*, 897 F.2d 1329, 1335 (5th Cir. 1990). The determination of vulnerability, however, cannot be reduced "to a calculation of the victim's age or to a diagnosis of the victim's disease." *United States v. Mejia-Orosco*, 868 F.2d 807, 809 (5th Cir. 1989).

---

[16] Coe does not present this argument on appeal.

10

No. 13-60069
No. 13-60070
No. 13-60091

The district court began its discussion of the vulnerable-victim adjustment by acknowledging that the government could not prove that Jones had actual knowledge of the victims' vulnerability.  The court found instead that an objectively reasonable person with Jones's knowledge of the scheme should have known that that they were vulnerable.

The court based that determination on three findings:  First, it noted that these type of telemarketing schemes are designed to prey on vulnerable victims.[17]  It found that, because of the nature of such schemes, every member of it should have known that the victims would be vulnerable.  Second, the court found that the victim's "names [are] indicative" of the fact that they victims are vulnerable, because "names like Mildred and Lula Belle . . . tend to be indicative of older persons."  Finally, the court considered "reloading[18] in this case [to be] a huge factor."  To that end, the court found that Jones had engaged in "reloading,"[19] and the fact that he was able to "reload" his victims

---

[17] "[O]ne of the things that some [similar] cases . . . put these types of [telemarketing] victims in a unique class. . . . I think it's just interesting that to employ this scheme it's necessary for David Beasley, Patrick Beasley, and George Coe to obtain these lead lists. There's a reason that they get the lead list. They get names. They get addresses, and they get persons that are typically called upon in telemarketing schemes. That's the reason vendors sell lead lists. So there is a reason why they work off of those lists. It's a telemarketing scheme. . . . [I]n absence of knowing the state of mind . . . of the runners, the Court really has to look at it from just a common sense approach. Given all of these factors and the totality of the circumstances, is it likely, is it probable, is it reasonable to believe that the scheme itself involved attracting, calling, preying upon vulnerable persons? And that's the nature of the scheme."

[18] Ewing defined "reloading" during the sentencing hearing as follows:  "When they find victims that are extremely vulnerable, a lot of times they preyed upon them multiple times. Some they preyed upon countless times."

[19] "[Jones] received from ten different victims reloads of numerous times, up to eight times, from any one of those ten victims."

11

No. 13-60069
No. 13-60070
No. 13-60091

should have indicated to him that they were vulnerable.[20]

Jones disputes each of these bases. Regarding the nature of the tele-marketing scheme, he argues the court erred by "imput[ing] the knowledge obtained by the organizers, to the low level runners such as Jones."

As for the second finding, Jones claims the court did not rely on any "empirical evidence [that] prov[es] that a person's name is a reliable indicator of his or her age." Alternatively, Jones urges that the particular names of the victims would not, in any case, indicate they are old and therefore vulnerable.[21]

Finally, Jones disputes that he "reloaded." Pointing to Ewing's testimony, he maintains "there was no evidence that Jones . . . placed any calls or spoke to the victims, [] compile[d] a database or list of names and [] had absolutely no control over which victims were called and solicited by the organizers." Jones avers that this "limited role in the offense does not rise to the same factual level of involvement in the conspiracy as other Circuits have used to apply the enhancement for reloading."[22]

Because the court did not clearly err in finding that Jones had reloaded his victims, we do not need to address whether it erred in its first two findings

---

[20] "[J]ust take any one day, Mr. Jones, that you're receiving two or more receipts of money from the same person that you don't know, that should put one on notice. . . . [O]ne would know one's personality, infirmity, something is leading that person to send money to someone that they [sic] do not even know and have a legitimate reason for doing so, and I think that is, by definition, vulnerable."

[21] Jones claims he "collected money from ten specific peple, all of whom use an array of different names such as Camelia, Florence, Lilyan, Jewel, Hannah, Judith, Catherine, Elizabeth, Lillian and Ozemai, none of which the District Court could have used to correctly determine the age of that person."

[22] Jones mentions *United States v. Llamas*, 599 F.3d 381 (4th Cir. 2010); *United States v. Day*, 405 F.3d 1293 (11th Cir. 2005); *United States v. Coe*, 220 F.3d 573 (7th Cir. 2000); and *United States v. Jackson*, 95 F.3d 500 (7th Cir. 1996).

No. 13-60069
No. 13-60070
No. 13-60091

or whether they support the vulnerable-victim adjustment.  Jones repeats the arguments made by Timothy Allen, *see Allen*, 2013 WL 3285686, at *5–6, in which case we upheld the application of the vulnerable-victim adjustment, *see id.* at *6.  In doing so, we declined to "adopt a bright-line rule with respect to reloading and instead . . . resolved [this issue] on the facts specific to this case." *Id.*  We concluded that the district court had not erred in applying the vulnerable-victim adjustment in light of the following findings:

> Even in the absence of knowing any victims' ages, Allen collected money in connection with a fraudulent scheme from the same individuals on multiple occasions.  Although he was not a leader of the scheme and did not personally contact any of the victims, he was involved in a large number of transactions, sometimes taking money from the same victim up to three times in a short period.

*Id.*

Therefore, even if the other circuits Jones cites require a higher degree of culpability than the district court attributed to Jones, this case cannot be distinguished from *Allen*.  Just as there, the district court did not find Jones to be "a leader of the scheme [or that he] personally contact[ed] any of the victims."  But, just as in *Allen*, the court found that Jones was "involved in a large number of transactions, sometimes taking money from the same victim" repeatedly in a short period.

Even if we were to consider the cases from the other circuits that Jones cites, we would not reach a different result.  It is true that other circuits have commonly used the "reloading" theory to justify applying a vulnerable-victim

13

No. 13-60069
No. 13-60070
No. 13-60091

adjustment to conspirators who had more directly interacted with the victims.[23]  None of those decisions,[24] however, compels the conclusion that the district court clearly erred in extending that theory to runners.  Because the defendants in those cases happened to have had more substantial roles, and because some of those schemes did not involve runners, those courts did not need to address whether the vulnerable-victim adjustment could be applied to runners.

Because Jones did not speak to any victim, he may not have known the particular cause of a victim's vulnerability.  When he returned to pick up more money from a victim shortly after having already done so, however, he should have recognized that that victim was vulnerable to this type of scheme; he should have known this to be especially true when he picked up money from the same victim eight consecutive times in short succession.  The district court did not clearly err in applying the vulnerable-victim adjustment to Jones.

---

[23] *Day*, 405 F.3d at 1296 ("Donna Day had a direct role in compiling the names and addresses of those who had previously donated to the Organizations, and adding them to the lead sheets that were provided to the Organizations' solicitors.  Donna Day's actions allowed, if not directed, the conspirators to repeatedly solicit those victims."); *United States v. Ciccone*, 219 F.3d 1078, 1086–87 (9th Cir. 2000); *Coe*, 220 F.3d at 582; *Jackson*, 95 F.3d at 504 ("Only experienced telemarketers, including both Mark Jackson and Stephans, were allowed to reload customers.").

[24] In *Llamas*, the district court did not even make a finding as to whether the defendant had reloaded.  *See Llamas*, 599 F.3d at 389 ("[T]he Government seeks to salvage the district court's application of the vulnerable victim adjustment by relying on other aspects of the record-which the court did not discuss.  For example, the Government maintains that, by attempting to 'reload' persons who had already fallen victim to the sweepstakes scheme, Llamas and his coconspirators preyed on individuals they knew to be 'particularly susceptible to the criminal conduct,' thereby supporting application of the vulnerable victim adjustment.  The court, however, did not adopt such a theory as its rationale for finding that Llamas should have known of the victims' unusual vulnerabilities.").

No. 13-60069
No. 13-60070
No. 13-60091

V.

Jones and Coe argue that the district court erred by applying enhancements under §§ 2B1.1(b)(2)(B) and 3A1.1(b)(2).  Neither raised that argument during sentencing, however, so we review only for plain error.  *See Mares*, 402 F.3d at 520.  To succeed, Jones and Coe need to show that (1) the district court erred; (2) this error is plain; (3) this error affects substantial rights; and (4) error "seriously affect[ed] the fairness, integrity, or public reputation of judicial proceedings."  *See id.* (quoting *Cotton*, 535 U.S. at 631).  Although the government concedes that the court erred and asks us to remand for another sentencing hearing on this issue, Coe and Jones must still affirmatively satisfy all four prongs.  We conduct the usual, rigorous plain-error review even where the government confesses error.[25]

The district court applied a four-level enhancement under § B1.1(b)(2)(B) because the offense involved more than fifty people.  The court also applied a four-level enhancement under § 3A1.1(b)(2) based on the vulnerable-victim enhancement.  The sentencing guidelines, however, prohibit applying both §§ 2B1.1(b)(2)(B) and 3A1.1(b)(2): "If subsection (b)(2)(B) or (C) applies, an enhancement under § 3A1.1(b)(2) shall not apply."  U.S.S.G. § 2B1.1 cmt. n.4 (2013).  In applying both enhancements to both sentences, the district court committed an error that was plain, thus satisfying the first two prongs.

As for the third prong, a plain error affects substantial rights where it is "prejudicial," that is, "affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).  A defendant needs to show "a reasonable probability that he would have received a lesser sentence,"

---

[25] *United States v. Hope*, 545 F.3d 293, 295 (5th Cir. 2008) ("We are not bound by the Government's concession of error and give the issue independent review.").

No. 13-60069
No. 13-60070
No. 13-60091

*United States v. Mudekunye*, 646 F.3d 281, 289 (5th Cir. 2011) (per curiam), which means "(1) the district court mistakenly calculate[d] the wrong Guidelines range, (2) the incorrect range is significantly higher than the true Guidelines range, and (3) the defendant [was] sentenced within the incorrect range," *id.* at 289–90.

Coe and Jones can show a reasonable probability that they would have received lesser sentences using the correct range. The district court initially incorrectly determined a range of 92 to 115 months for Coe and 78 to 97 months for Jones; the correct ranges were 77 to 96 and 63 to 78 months, respectively. The court sentenced both within the incorrect ranges.

This case is unusual, because we know for sure what the district court would have done, given that it attempted to re-sentence the defendants. Recognizing its error, the court (1) recalculated the appropriate ranges and (2) sentenced Coe and Jones to lower sentences. Coe and Jones can therefore easily show that the error affected their substantial rights.

Regarding the fourth prong, this case presents a situation that is seldom presented: The defendants, the government, and the district court agree that the court plainly erred. Furthermore, this court found plain error in assessing the identical issue raised by Beasley.[26] We carefully note, however, that the fourth prong is not automatically satisfied just because the other three have been met. *United States v. Escalante-Reyes*, 689 F.3d 415, 425 (5th Cir. 2012) (en banc). Relief under the fourth prong should be granted only "rarely," *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004), and only in

---

[26] *See Beasley*, 481 F. App'x at 145. *Beasley* does not, however, discuss why this error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See id.*

No. 13-60069
No. 13-60070
No. 13-60091

"exceptional circumstances," *United States v. Atkinson*, 297 U.S. 157, 160 (1936).

Because the instance circumstance qualifies as rare and exceptional, the fourth prong has been satisfied:  It would seriously affect the fairness, integrity, and public reputation of judicial proceedings if we did not allow the district court to correct an error it recognized and attempted to correct but did not have jurisdiction, where the government does not object and this court, albeit in an unpublished opinion, already has recognized that this precise mistake constitutes plain error for a fellow co-conspirator.

The judgments of sentence are AFFIRMED in part and VACATED in part and REMANDED for resentencing.